**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1588

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for The Bank of Asheville,

Plaintiff - Appellee,

v.

AVERY T. CASHION, III,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, District Judge. (1:11-cv-00072-MR-DLH)

Argued: March 19, 2013                    Decided: June 19, 2013

Before MOTZ, KING, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the majority opinion, in which Judge Motz joined. Judge King wrote a dissenting opinion.

**ARGUED:** Edward Louis Bleynat, Jr., FERIKES & BLEYNAT, PLLC, Asheville, North Carolina, for Appellant. Esther Elizabeth Manheimer, VAN WINKLE, BUCK, WALL, STARNES & DAVIS, PA, Asheville, North Carolina, for Appellee. **ON BRIEF:** Lynn D. Moffa, VAN WINKLE, BUCK, WALL, STARNES & DAVIS, PA, Asheville, North Carolina, for Appellee.

AGEE, Circuit Judge:

Avery T. Cashion, III, appeals from the district court's judgment in favor of the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for The Bank of Asheville ("the Bank"), in this action by the FDIC to recover the deficiency owed on a promissory note executed by Cashion and payable to the Bank. Cashion contends that the district court erred in granting summary judgment to the FDIC because genuine issues of material fact exist as to whether the FDIC was the holder of the note and whether the note had been cancelled or assigned. He also asserts the district court abused its discretion in striking his surreply brief opposing summary judgment and an affidavit attached to it. For the reasons set forth below, we affirm the judgment of the district court.

I.

In August 2006, Cashion signed a promissory note ("Note") payable to the Bank in the original principal amount of $2,000,000.00. Through March 2010, the Bank and Cashion entered into a number of modifications and renewals of the Note. The Note was originally secured by three other promissory notes, and a fourth promissory note was added as additional collateral in 2010.

2

In September 2010, the Bank filed an action in North Carolina state court alleging that it was the holder of the Note, that Cashion had defaulted by failing to make the payments due on the Note, and that it was entitled to full payment plus interest pursuant to the Note's terms. Cashion's Answer admitted "a copy of a document, which speaks for itself, is attached to [the Bank's] Complaint," and that the signature on that document "appears to be the signature of Mr. Cashion," but "demand[ed] that the [Bank] produce the original document that is described as [the Note]." (J.A. 17-19.)

Before the case proceeded further, the Bank closed and the FDIC was named receiver and liquidating agent. After the FDIC was substituted as the real party in interest in the state court, it removed the case to the United States District Court for the Western District of North Carolina.[1] The FDIC then moved for summary judgment, asserting that it had set forth a prima facie case to recover proceeds on the Note and that no genuine issues of material fact precluded judgment as a matter of law. It attached to the motion an affidavit from Sherry M. Martin, a "Resolutions and Receiverships Specialist" for the FDIC who was

---

[1] Federal courts have jurisdiction over all civil suits "to which the [FDIC], in any capacity, is a party," and the FDIC is authorized to remove actions pending in state court to "the appropriate United States district court" if the FDIC is substituted as a party. 12 U.S.C. § 1819(b)(2)(A)-(B).

3

"familiar with the books and records of" the FDIC and the Bank. Martin stated in the affidavit that the information alleged in the Complaint came from records and employees of the Bank, and was correct and true. (J.A. 31.)

Cashion opposed the motion, asserting that two genuine issues of material fact existed: first, whether the FDIC satisfied its burden of proving that it was the holder of the Note in light of its failure to produce the original Note, and second, whether the Note had been cancelled or assigned. To support the latter argument, Cashion included an affidavit asserting the Note had been cancelled and attaching a copy of the Internal Revenue Service ("IRS") Form 1099-C that he alleged he received from the Bank in early 2010 ("the 1099-C Form") as the sole basis for his affidavit.[2] The 1099-C Form, labeled "Cancellation of Debt" in pre-printed text, had been filled out by hand and lists the Bank of Asheville as the creditor and Cashion as the debtor, references the Note's account number, reflects the "Date canceled" as "6/23/2010" and the "Amount of

---

[2] Cashion attached copies of two different Form 1099-Cs he claimed he received from the Bank, but only one of them lists the same account number as the Note. While Cashion continues to refer to both forms on appeal, our analysis considers only the Form 1099-C bearing the Note's account number. On its face, the other form does not appear to relate to the Note, and Cashion did not introduce any evidence suggesting that it in fact does.

4

debt canceled" as $1,993,222.20. The "Debt description" box states: "Assignment of Promissory Notes." (J.A. 42.)

The FDIC attached a supplemental affidavit from Martin to its response in support of summary judgment in which she reiterated her

> familiar[ity] with the books and records acquired by the [FDIC] when it was appointed Receiver for [the Bank]. . . . The books and records in question were made at or near the time of the matters therein recorded and were kept in the course of [the Bank's] regularly conducted business activity, the regular practice of which was to keep such books and records.

(J.A. 81.) Martin's supplemental affidavit also stated that the FDIC had possession of the original Note, that the copy attached to the Complaint was "true and correct," that the Note had not been transferred or assigned to a third party, that the Note had not been paid by Cashion or a third party, and that the Note had not been cancelled or Cashion "otherwise absolved" of liability. Martin also stated that based on the Bank's records in the FDIC's possession, the 1099-C Form "appear[ed] to have been sent to Mr. Cashion by [the Bank] prior to the" receivership. (J.A. 82.) Martin also indicated that

> [t]he most likely explanation for the debt cancellation referred to in hand-writing on the IRS 1099-C Form . . . is that "Assignment of Promissory Notes" refers to *the collateral securing the Note* . . . . The fact that [the Bank] may have issued an IRS 1099-C Form concerning the *collateral* that secured the Note does not mean that [the Bank] cancelled [Cashion's] debt to [the Bank] reflected by the Note.

5

(J.A. 82.) Based on Martin's supplemental affidavit, the FDIC argued that it was the holder of the Note and was not required to produce the original Note in order to prove that status under North Carolina law because a true copy was sufficient. In addition, the FDIC contended that the 1099-C Form was inadmissible hearsay and that Cashion had not "properly authenticated" the form for admission into evidence under any of the exceptions to the rule against hearsay. The FDIC also posited that the 1099-C Form did not refer to the Note, but to the collateral for the Note. Alternatively, the FDIC asserted that "at most," the 1099-C Form indicated the Bank's intent that the Note be cancelled, but was not competent evidence of actual cancellation.

Cashion did not move to strike Martin's supplemental affidavit, but instead filed an additional notice of filing in opposition to summary judgment (hereinafter "surreply") countering the FDIC's arguments regarding the admissibility and import of the 1099-C Form. Cashion attached to the surreply an affidavit from his business partner, Raymond M. Chapman, in which Chapman described the 1099-C Form and then gave his viewpoint as to what Cashion's receipt of the 1099-C Form from the Bank likely meant (cancellation of the Note).

The FDIC moved to strike the surreply and Chapman affidavit, noting that "[n]othing in the [c]ourt's Pretrial

6

Order and Case Management Plan authorize[d] the filing of a surreply," and Cashion had not sought leave of court to authorize such a filing. (J.A. 127.) It further asserted that a surreply was not appropriate under the circumstances given that its reply had not raised any new issues. In addition, the FDIC argued that the Chapman affidavit contained opinion testimony from a person who was not an expert witness rather than information based on Chapman's personal knowledge. For that reason, the FDIC urged the district court to strike or disregard the affidavit.[3]

For reasons summarized in context below, the district court granted the FDIC's motion to strike the surreply and Chapman affidavit, denied Cashion's motion for leave to file those items, and then awarded summary judgment to the FDIC. The district court entered final judgment in favor of the FDIC in the amount of "$2,111,427.12, together with interest at the rate of $373.73 per day from and after September 2, 2010." (J.A. 290.)

Cashion noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[3] After the FDIC's motion to strike was filed, Cashion filed a motion requesting the district court grant him leave to file the surreply. Cashion asserted that his filing of the surreply was appropriate given the "new" issues surrounding the 1099-C Form that he contended were raised for the first time in the FDIC's reply brief.

7

II.

Cashion raises three issues on appeal: (1) whether the district court erred in granting summary judgment to the FDIC because a genuine issue of material fact exists as to whether the FDIC is the holder of the Note; (2) whether the district court abused its discretion in granting the FDIC's motion to strike the surreply and Chapman's affidavit; and (3) whether the district court erred in granting summary judgment to the FDIC because a genuine issue of material fact exists as to whether the Note has been cancelled or assigned.

We review an award of summary judgment de novo. Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). In considering the matter, we construe the evidence in the light most favorable to the non-moving party—here, Cashion—and draw all reasonable inferences in his favor. See Adams, 640 F.3d at 556.

We review the district court's evidentiary and scheduling decisions for abuse of discretion. See Noel v. Artson, 641 F.3d 580, 591 (4th Cir. 2011) (stating that a district court's evidentiary decisions are reviewed for abuse of discretion); Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390,

8

396 (4th Cir. 1994) (stating the district court's decisions regarding briefing and hearing on summary judgment motions are reviewed for abuse of discretion).

## A.

Consistent with the Note's governing law provision, we look to North Carolina law to determine whether the FDIC established that it is the "holder" of the Note. The "holder" of a negotiable instrument is entitled to enforce it. N.C. Gen. Stat. § 25-3-301. A "holder" is the "individual, corporation, . . . or any other legal or commercial entity," N.C. Gen. Stat. § 25-1-201(b)(27), "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." N.C. Gen. Stat. § 25-1-201(b)(21). "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." L. Harvey & Son Co. v. Jarman, 333 S.E.2d 47, 52 (N.C. Ct. App. 1985) (quoting former N.C. Gen. Stat. § 25-3-307(2), recodified using similar language at N.C. Gen. Stat. § 25-3-308).

The district court rejected Cashion's contention that the FDIC had not shown that it is the holder of the Note because it failed to produce the original Note despite Cashion's "demand" in his Answer that it do so. Relying on Dobson v. Substitute

9

Tr. Servs., Inc._, 711 S.E.2d 728 (N.C. Ct. App. 2011), and _Liles v. Myers_, 248 S.E.2d 385 (N.C. Ct. App. 1978), the district court concluded that "production of the original Note is not the only manner in which holder status can be proved" under North Carolina law. (J.A. 277.) The district court observed that the FDIC had proffered evidence that the Bank was the holder, that the FDIC succeeded to all rights of the Bank when it was appointed as the Bank's receiver, and that a true and accurate copy of the Note was in the record. In addition, the district court observed that Cashion did not dispute the accuracy of the copy but instead simply "made a 'strict demand' for production of the original Note in his Answer."[4] (J.A. 277.)

On appeal, Cashion contends the district court erred because the FDIC had not satisfied its burden of proving, under North Carolina law, that it was the holder of the Note due to the failure to produce the original Note in response to Cashion's demand for "strict proof." (Opening Br. 8.) Cashion points to _Liles_ as establishing a party's right under North Carolina law to demand such strict proof, and points to the Bank's entering into receivership as sufficient to create uncertainty as to the content of the Bank's records. Cashion

---

[4] The district court also accurately noted that Cashion "never made a formal discovery request for the production of the [Note]." (J.A. 277 n.2.)

10

asserts that Martin's "[c]arefully crafted affidavit[]" is insufficient to prove holder status because it was a "perfunctory and conclusory verification" in the face of Cashion's demand. (Opening Br. 18, 22.)

We readily conclude that Cashion's argument misconstrues the relevant North Carolina case law. In <u>Liles</u>, the Court of Appeals of North Carolina held that the plaintiff failed to introduce the promissory "note itself <u>or any other competent evidence</u>" showing that the plaintiff was the current holder of the note. 248 S.E.2d at 388 (emphasis added). Cashion's argument ignores the court's inclusion of the category "or any other competent evidence" in asserting that <u>Liles</u> permits a debtor to demand strict proof in the form of the original Note as a mandatory condition precedent before a court can determine status as a holder. Any uncertainty remaining after <u>Liles</u> was eliminated in <u>Dobson</u>, wherein the North Carolina Court of Appeals flatly rejected the same argument now made by Cashion: that a holder of a note cannot prove his status by producing a copy of a promissory note as opposed to the original. 711 S.E.2d at 730. In <u>Dobson</u>, the plaintiff introduced a true and correct copy of the promissory note as well as affidavits from two bank officials stating that the bank was the owner and holder of the note. <u>Id.</u> The debtor disputed the accuracy of the copy, but offered no evidence that the photocopy was not a

11

true and correct copy. The North Carolina Court of Appeals noted that "[u]nder similar circumstances" it had

> held that where there is no evidence that photocopies of a note or deed of trust are not exact reproductions of the original instruments, a party need not present the original note or deed of trust and may establish that it is the holder of the instruments by presenting photocopies of the note or deed of trust.

Id. The debtor's "bare statement" denying the authenticity of the copy and demanding production of the original was "insufficient to cast doubt on [the bank's] evidence that [it] is the holder of the note and does not serve as evidence that the copies are not exact reproductions." Id. at 731.

So, too, Cashion's demand of "strict proof" through production of the original Note is not sufficient under applicable North Carolina law to defeat summary judgment by creating a genuine issue of material fact. Like the debtor in Dobson, Cashion produced no evidence to suggest that the copy of the Note in the record was somehow inaccurate, or anything but a true and correct copy. Nor did he produce any evidence other than bald speculation and his "bare statement" that the FDIC did not possess the original Note. Cashion also failed to introduce any facts that question the veracity of Sherry M. Martin's affidavit, which was based on her personal knowledge of the Bank's records. See In re Foreclosure by David A. Simpson, P.C., 711 S.E.2d 165, 174-75 (N.C. Ct. App. 2011) (discussing

12

why an affiant's factual statements, so long as they are based on personal knowledge, are competent evidence). In short, Cashion came forward with no facts that call into question the FDIC's evidence establishing that it is the holder of the Note. See Econo-Travel Motor Hotel Corp. v. Taylor, 271 S.E.2d 54, 57 (N.C. 1980) (stating that to create a question of fact challenging this evidence, the debtor would have to "come forward with facts, not mere allegations, which controvert the fact set forth in [the plaintiff's] case"). The copy of the Note, coupled with Martin's affidavit, is sufficient "other competent evidence" to prove the FDIC's status as holder of the Note under North Carolina law. The district court thus did not err in concluding that no genuine issue of material fact existed as to the FDIC's status as holder of the Note.

B.

The district court granted the FDIC's motion to strike the surreply and Chapman's affidavit. It characterized the FDIC's arguments regarding the 1099-C Form as "responses" and "rebuttal[s]" to issues raised in Cashion's response in opposition to summary judgment, rather than "'new' matters raised for the first time in the Reply." (J.A. 274.) As such, it concluded Cashion "had ample opportunity to present all of his arguments and evidence regarding the [1099-C Form] in his

13

Responses to the FDIC's Motion for Summary Judgment," and could have done so at that time. (J.A. 275.) The court also concluded that Chapman's affidavit provided interpretations of the 1099-C Form, but because Chapman was not put forward as an expert witness, such testimony was not admissible as it went beyond his personal knowledge.

Cashion contends these decisions constituted reversible error given that both the surreply and Chapman's affidavit address the important matter of showing why the 1099-C Form was competent evidence. He explains that because the surreply and Chapman affidavit "were offered to aid, rather than hamper, the decision making process," Opening Br. 46, and were offered in response to an argument made for the first time in the reply brief (that the 1099-C Form was inadmissible and referred to the collateral for the Note), the district court should not have stricken them.

On this record, we cannot say that the district court abused its discretion in granting the motion to strike Cashion's surreply. Surreplies are generally not permitted under the local rules of the Western District of North Carolina, Local Rule 7.1(E), and the parties' briefing schedule did not authorize filing one. Cashion relied on the 1099-C Form in opposing summary judgment. The FDIC's reply brief then challenged both the admissibility and weight of this evidence in

14

considering summary judgment. The reply brief therefore did not raise a new legal theory or new evidence, but instead responded to Cashion's own argument and evidence. That Cashion failed to anticipate how the FDIC would respond to his reliance on the 1099-C Form does not automatically entitle him to file a surreply. Nor can we discern any other reason that would make the district court's decision inequitable.

As to the decision to strike Chapman's affidavit, Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Chapman's affidavit gives his lay opinion about the meaning of the 1099-C Form and challenges Martin's interpretation of it. Cashion has failed to show how that testimony reflects Chapman's "personal knowledge" of the 1099-C Form, nor can he; it is speculative and expresses Chapman's opinion.[5] For these reasons, the district court did not abuse its discretion in striking the surreply and Chapman's affidavit.

---

[5] To the extent Cashion argues that Martin's affidavit should have been stricken because it, too, went beyond the scope of Rule 56(c), we note that Cashion failed to move to strike her affidavit. The district court thus had no occasion to consider that argument or rule upon it; as such, the matter is not properly before this Court on appeal.

C.

The district court provided three different bases for its conclusion that the 1099-C Form did not create an issue of material fact as to whether the Note had been cancelled or assigned. We need only address one of those grounds in light of our conclusion that it was a proper basis for rejecting Cashion's position.[6] The district court held that "a Form 1099-C does not itself operate to legally discharge a debtor's liability," and thus "does not, standing alone, raise a genuine issue of material fact regarding [Cashion's] liability on the Note." (J.A. 283-84.) The district court held that summary judgment in favor of the FDIC was therefore appropriate because the Note was not "sufficient evidence for a jury to return a verdict in [Cashion's] favor on the issue of whether the Note . . . had been cancelled and/or assigned by [the Bank] prior to the institution of this action." (J.A. 285.)

---

[6] At the outset, the district court noted Cashion had not established a proper foundation for admitting the Form into evidence, given that it was hearsay and had not been authenticated pursuant to Rule 803(6) or 902(11) of the Federal Rules of Evidence. It then concluded that the 1099-C Form "appear[ed] to relate not to the assignment or cancellation of the . . . Note but rather to the assignment or cancellation of the Note's collateral" given that the 1099-C Form refers to "Assignment of Promissory Notes." (J.A. 283). Only then did the court turn to the basis on which we affirm. Although we note some uncertainty as to the validity of these first two grounds, we need not examine them further given our agreement with the district court on its third basis of decision.

16

Cashion contends here, as he did below, that the 1099-C Form is prima facie evidence that the Note was discharged given that actual discharge is one of the identifiable events that can trigger the requirement to send the IRS and debtor copies of the form. Cashion points to a handful of state and federal lower court decisions that support his position that the district court erred in holding that the 1099-C Form does not constitute sufficient evidence of discharge to withstand a motion for summary judgment. Under Cashion's theory of the case, the 1099-C Form is prima facie evidence of a discharge, and having proffered this prima facie evidence, the burden of persuasion shifted to the FDIC to rebut a presumption of cancellation. And, he contends, the FDIC cannot successfully rebut the presumption in this case because it has disavowed knowledge of actions prior to when the Bank entered into receivership.

The FDIC responds that the 1099-C Form did not create a genuine issue of material fact that would preclude summary judgment in its favor because it is not sufficient evidence alone upon which a jury could find in favor of Cashion. Citing to the relevant IRS regulations, IRS statements regarding 1099-C Forms, various state and federal lower court opinions, and an unpublished opinion from the Fifth Circuit (some of which the district court relied on as well), the FDIC contends that the 1099-C Form did not effectuate a discharge, did not preclude it

17

from seeking to collect the amount owed on the Note, and evidenced at most proof of an intent to cancel rather than actual cancellation. Accordingly, the FDIC asserts the district court did not err in concluding that the 1099-C Form did not create a genuine issue of material fact as to whether the Note had been cancelled or assigned.

The question before us is relatively straightforward: did the introduction into evidence of the 1099-C Form create a genuine issue of material fact as to whether the Note had been cancelled or assigned. This specific issue is one of first impression not only before this Court, but apparently before any federal appellate court through a published opinion. While approximately two dozen state and federal cases discuss the legal significance of a creditor filing a Form 1099-C with the IRS in any analogous context, there is only one relevant federal appellate court opinion, and it is unpublished. See Owens v. Commissioner, No. 02-61057, 2003 U.S. App. LEXIS 12481 (5th Cir. May 15, 2003) (per curiam) (unpublished). The other opinions, both published and unpublished, are from the United States Tax Court, bankruptcy courts, United States District Courts, and various state trial and appellate courts. As discussed in the parties' briefs and observed above, there is no uniformity in how these courts have resolved the central inquiry.

18

A small minority of the lower courts have held, as Cashion urges us to do here, that filing a Form 1099-C with the IRS constitutes prima facie evidence of an intent to discharge a loan, at which point the burden of persuasion shifts to the creditor to proffer evidence that it was filed by mistake or pursuant to another triggering event in the regulations. See, e.g., In re Welsh, No. 06-10831ELF, 2006 WL 3859233 (Bankr. E.D. Pa. Oct. 27, 2006) (unpublished); Amtrust Bank v. Fossett, 224 P.3d 935, 936-38 (Ariz. Ct. App. 2009); Franklin Credit Mgmt. Corp. v. Nicholas, 812 A.2d 51, 58-60 (Conn. App. 2002). These courts have generally noted that because filing a Form 1099-C has legal significance to the debtor's income tax liability, and because the debtor faces penalties or fines for failing to comply with the obligations imposed, it would be inequitable to permit a creditor to collect the debt after having received the benefit of the "charge-off" of the debt from filing the Form 1099-C. Lastly, some—but not all—of the courts holding that a filed Form 1099-C alone is prima facie evidence of discharge have also recognized that the form can satisfy the applicable UCC provisions for when a writing constitutes an "intentional voluntary act" of discharge, and thus itself effectuates the discharge of the relevant debt. See, e.g., Franklin Credit Mgmt. Corp., 812 A.2d at 60-61.

19

While we cannot say that the analysis summarized above lacks any support, we find a different approach taken by a majority of the courts to consider the matter ultimately more persuasive. That analysis relies principally on the language of the IRS regulations and the purpose of a Form 1099-C. E.g., Capital One, N.A. v. Massey, Case No. 4:10-CV-01707, 2011 WL 3299934, *3-*4 (S.D. Tex. Aug. 1, 2011) (unpublished); In re Zilka, 407 B.R. 684, 687-92 (Bankr. W.D. Pa. 2009); Lifestyles of Jasper, Inc. v. Gremore, 299 S.W.3d 275, 276-77 (Ky. Ct. App. 2009).

The Internal Revenue Code ("IRC") sets forth certain reporting requirements to the IRS, 26 U.S.C. § 6050P, which the IRS regulations have implemented through the Form 1099-C filing requirement:

> any applicable entity . . . that discharges an indebtedness of any person . . . must file an information return on Form 1099-C with the Internal Revenue Service. Solely for purposes of the reporting requirements of [the applicable statute and this regulation], a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.

26 C.F.R. § 1.6070P-1(a) (emphasis added). Subsection (b)(2) of 26 C.F.R. § 1.6070P-1 lists eight "identifiable events" that trigger the reporting obligation. The identifiable events include discharge through the debtor's filing for bankruptcy,

20

the expiration of the statute of limitations for collection, discharge by agreement of the parties, a creditor's decision "to discontinue collection activity and discharge debt," and "expiration of the non-payment testing period." § 1.6070P-1(b)(2)(i).

Tracking the plain language of the regulation, a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated. Cf. Subsection (a). Moreover, the identifiable event triggering the obligation may not involve an actual discharge of the debt; rather, the event may be deemed to constitute a "discharge" "[s]olely for purposes of" determining the Form 1099-C reporting obligation. Cf. id. and subsection (b).

The plain language of the regulation leads us to conclude that filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred. This understanding of the creditor's obligation to file a Form 1099-C is also clearly expressed in the IRS's own interpretation of the regulations. Two IRS Information Letters issued in October 2005 addressed concerns regarding the impact of a creditor's compliance with the Form 1099-C reporting obligation and the

21

continuing liability of a debtor on the subject debt. I.R.S. Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005); I.R.S. Info. 2005-0208, 2005 WL 3561136 (Dec. 30, 2005). In the first, the IRS addressed a creditor's concern that filing the Form 1099-C would constitute a written admission that it had discharged the debt and would therefore make debtors unwilling to pay on their obligations. Citing subsection (a) of the regulations discussed above, the IRS responded that it "does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." I.R.S. Info. 2005-0207. In the second letter, the IRS assured a concerned creditor that filing a Form 1099-C satisfies the reporting requirements of statute and implementing regulations, neither of which "prohibit collection activity after a creditor reports by filing a Form 1099-C." I.R.S. Info. 2005-0208.

The IRS, the administrative agency charged with the obligation of implementing IRC § 6050P through its regulations, thus treats the Form 1099-C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt. Moreover, as the IRS correctly noted in the foregoing Information Letters, nothing in the relevant statute or regulations prohibits collection following the filing of a

22

Form 1099-C.[7]  Although the IRS' interpretation is expressed in an information letter rather than a regulation or ruling, and thus is not subject to Chevron[8]-style deference, it is nonetheless "entitled to respect . . . to the extent that [its] interpretations have the power to persuade."  Christensen v. Harris County, 529 U.S. 576, 587 (2000) (internal quotation marks omitted); see Dominion Res., Inc. v. United States, 219 F.3d 359, 366 (4th Cir. 2000).  We find the IRS's view persuasive because it fully encompasses the purpose of a Form 1099-C as an IRS reporting document and follows the plain language of the relevant regulation.

As noted, several courts have expressed a similar interpretation of the filing of a Form 1099-C, and although none of their opinions are binding on us, we note the reasoning expressed in some of them.  In Owens v. Commissioner, No. 02-61057, 2003 U.S. App. LEXIS 12481 (5th Cir. May 15, 2003) (per curiam) (unpublished), the Fifth Circuit observed that a Form 1099-C was not evidence that the creditor had actually cancelled a debt, but rather reflected at most an intention to cancel the debt in the future.  Id. at *11-*12.  It thus criticized the IRS

---

[7] While some of the circumstances triggering the obligation to file a Form 1099-C may bar collection, it is that separate circumstance and not the fact of filing a Form 1099-C that acts as the bar.

[8] Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837 (1984).

for not "bother[ing] to follow up on the intention . . . to verify actual cancellation" and instead relying solely on the issuance of a Form 1099-C when it charged the taxpayers with being deficient on their income taxes. Id. at *12.

In a case more similar in setting to that at bar, in Capital One, N.A. v. Massey, No. 4:10-CV-01707, 2011 WL 3299934 (S.D. Texas Aug. 1, 2011) (unpublished), the United States District Court for the Southern District of Texas "adopt[ed] the view that a 1099-C does not discharge debtors from liability" because the form is "issued to comply with IRS reporting requirements" and the IRS does not view it "as a legal admission that a debtor is absolved from liability for a debt." 2011 WL 3299934, at *3. Accordingly, the Capital One court held that "the fact that [a creditor] issued a 1099-C in relation to the Borrowers' indebtedness is irrelevant and does not raise a genuine issue of material fact" as to whether the debt had been cancelled. Id.

Here, Cashion claims that the 1099-C Form is prima facie evidence, in and of itself, that the Note has been cancelled. We disagree. As noted earlier, the IRS did not create the form as a means of effectuating the discharge of a debt. It is, instead, a reporting mechanism to the IRS. Moreover, because a creditor can be required to file a Form 1099-C even where a debt has not been cancelled, the mere fact that a Form 1099-C is

24

filed does not constitute sufficient evidence, standing alone, that a debt has been cancelled. Without more, it is impossible for a court to know what the existence of a filed Form 1099-C means. It may mean the debt has been discharged; it may mean the creditor intended to discharge the debt in the future; or it may mean that another of the "identifiable events" in the regulation occurred apart from an actual discharge. Furthermore, it may also have simply been filed by mistake. The bare Form 1099-C alone, which is Cashion's sole evidence of debt discharge in this case, does not provide any of the contextual clues needed to decide between these alternatives.

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine issue" of fact exists "when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The nonmoving party "'may not rely merely on allegations or denials in [his] own pleading' but must 'set out specific facts showing a genuine issue for trial.'" Id. (quoting Fed. R. Civil Pro. 56(e)).

25

Cashion's claim of cancellation or assignment of the Note is based solely on the 1099-C Form. He never proffered a reason for cancellation or any evidence beside the 1099-C Form he received to prove cancellation. Cashion admitted he had not paid the Note.[9] Only Cashion's bald speculation ties his receipt of the 1099-C Form to a specific reason as to why the Bank would have issued it. As a matter of law, a jury could not have rendered a verdict in Cashion's favor that the Note was cancelled or assigned when the sole evidence put forth was the 1099-C Form. As such, there is no genuine issue of material fact in this case. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (In the context of whether an issue of fact is "genuine," an opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." He "must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").

In so holding, we are careful to note the specific circumstances of this case and the narrowness of our holding.

---

[9] Significantly, Cashion never sought discovery related to the issuance of the 1099-C Form or attempted to develop the record beyond the mere existence of the form as support for his argument.

26

The case at bar is likely an oddity, where the 1099-C Form is the only evidence of debt discharge before the Court.[10] This is not a situation where the evidentiary value of a Form 1099-C is considered in conjunction with other competent evidence regarding the circumstances surrounding its filing. In another case, where a properly authenticated Form 1099-C is introduced into evidence along with other circumstantial evidence of cancellation of the debt, the Form 1099-C could be properly considered by the trier of fact under the totality of the circumstances on the ultimate issue of whether the debt in question was, in fact, cancelled. But here, because Cashion has not come forward with evidence that creates a genuine issue of material fact as to whether the Note has been cancelled or assigned, the district court did not err in granting the FDIC's motion for summary judgment.[11]

---

[10] As the dissent observes, the affidavit Cashion submitted attested that the Bank had cancelled the Note. The affidavit plainly represents that Cashion's only basis for this belief is the 1099-C Form he received from the Bank. He offers no basis in the affidavit as proof of cancellation except the 1099-C Form itself. As such, Cashion's affidavit does not change the relevant evidence that was before the district court when considering whether a genuine issue of material fact existed as to the Note's cancellation.

[11] Cashion repeatedly refers to the 1099-C Form as being evidence of cancellation and/or assignment. However, he does not raise any separate argument as to why the district court erred in concluding the 1099-C Form did not raise a genuine issue of material fact as to the Note's assignment than he does
(Continued)

27

III.

For the reasons set forth above, the judgment of the district court in favor of the FDIC is

AFFIRMED.

---

as to its being evidence of cancellation.  As such, our analysis need not extend further.

KING, Circuit Judge, dissenting:

With all respect for my distinguished colleagues, I would vacate the judgment below and remand for trial. In ruling on the summary judgment motion, the district court improperly disregarded admissible evidence which, viewed in the light most favorable to Cashion, creates a genuine dispute of material fact as to whether Cashion's $2 million debt to the Bank of Asheville has been discharged.

As my friends emphasize, a Form 1099-C does not necessarily prove the discharge of a debt. It is of little moment, however, that IRS regulations specify that a Form 1099-C may be created "whether or not an actual discharge of indebtedness has occurred." See 26 C.F.R. § 1.6070P-1(a). In the district court, Cashion presented the handwritten Form 1099-C, referencing the sum of more than $1.9 million, in opposition to the FDIC's summary judgment motion. Contemporaneously therewith, Cashion filed his own affidavit asserting, inter alia, that "the Bank cancelled the alleged debt," and that "the Bank . . . has acknowledged that the debt which is a subject of this lawsuit has been cancelled and assigned." (J.A. 32, 38.) Significantly, it was not Cashion's burden to establish on the FDIC's summary judgment motion that his debt to the Bank was discharged as a matter of law. Rather, Cashion was obliged to show merely that there is a genuine dispute of material fact.

In its reply memorandum, the FDIC asserted that: (1) the Form 1099-C constitutes inadmissible hearsay; (2) the Form 1099-C relates only to the collateral secured by the Note; and (3) the Form 1099-C is insufficient, on its own, to create a genuine dispute of material fact as to whether the underlying debt has been discharged. As the majority observes, the district court adopted all three of the FDIC's arguments.

First, however, the Form 1099-C is admissible as a business record, pursuant to Rule 803(6) of the Federal Rules of Evidence. With its reply in support of summary judgment, the FDIC filed the affidavit of Sherry Martin, a Resolutions and Receiverships Specialist familiar with the books and records of the Bank. That affidavit establishes the provenance of the Bank's records, relating that

> [t]he books and records in question were made at or near the time of the matters therein recorded and were kept in the course of [the Bank's] regularly conducted business activity, the regular practice of which was to keep such books and records.

J.A. 81. Martin's affidavit specifically discusses the Form 1099-C, reciting that "[b]ased on the books and records of [the Bank], the[] [Form 1099-C] appear[s] to have been sent to Mr. Cashion by [the Bank.]" Id. at 82. These statements are all

30

that is required by Rule 803(6) to render admissible the Form 1099-C.[1]

Second, in concluding that the Form 1099-C relates only to the collateral secured by the Note, the district court relied on the Form's description of the debt as "Assignment of Promissory Notes." J.A. 42. However, the Form 1099-C lists its relevant account number as 4436, the Bank's account number for the loan and the Note. Thus, there are competing inferences to be resolved by a jury, not by a court on summary judgment.

Finally, contrary to the majority's assertion, this case does not present the question of whether the Form 1099-C, standing alone, constitutes "sufficient evidence [on] which a jury could find in favor of Cashion." Ante at 17. Put simply, the Form 1099-C cannot be considered in a vacuum. It was filed in the district court along with Cashion's own affidavit, wherein he verifies that the Bank has cancelled his debt.

According to the majority, Cashion's affidavit should be discounted because it "plainly represents" that the Form 1099-C provides the only basis for Cashion's belief that the Bank discharged his debt. Ante at 27 n.10. Though the affidavit refers to the Form 1099-C, Cashion does not contend that his

---

[1] If the proper foundation is established, the Form 1099-C would likely also be admissible as the statement of an opposing party, pursuant to Federal Rule of Evidence 801(d)(2).

31

belief is based solely on the Form. Indeed, the Form provides no explanation (except its references to collateral and the account number associated with the Note) for why the Bank created and sent it to Cashion. In these circumstances, a reasonable jury would be entitled to infer that the Form 1099-C reflects an intent on the part of the Bank to discharge Cashion's debt. Such an inference is supported by the origin of the Form 1099-C, i.e., the Bank itself, and the FDIC's failure to show that the circumstances of the Form's existence "indicate [any] lack of trustworthiness." Fed. R. Evid. 803(6)(E).[2]

The majority's discussion of the divergent legal principles concerning the evidentiary weight properly accorded a Form 1099-C is, in my view, unnecessary, and the discussion simply reinforces the proposition that "'reasonable minds could differ'" on this central point. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting

---

[2] In assessing the meaning of the Form's reference to "Cancellation of Debt," the jury would be entitled to view the cancellation in several ways, such as, by way of example, a discharge, a charge-off, a refinancing, a corrupt action by a Bank officer, or, perhaps, a gift by the Bank. Any of these plausible views of the record would give rise to an inference sufficient to defeat the FDIC's summary judgment motion, because it bears the burden on summary judgment of showing the absence of a genuine dispute of material fact. See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." (alterations and internal quotation marks omitted)).

<u>Anderson v. Liberty Lobby, Inc.</u>, 47 U.S. 242, 250 (1986) (explaining that, on summary judgment, court must determine whether "there are any genuine factual issues that properly can be resolved . . . in favor of either party")). As a result, summary judgment should not be awarded.

Finally, I acknowledge that the handwritten Form 1099-C, viewed in the context of the substantial nature of the loan and the careful manner in which banks normally do business, could lead a reasonable factfinder to view this particular Form with suspicion. Indeed, if I were the factfinder, I would seriously question the legitimacy of a handwritten Form 1099-C purporting to cancel nearly $2 million of debt. But, as an appeals court, we do not sit in a factfinding capacity, and neither does a district court when resolving a summary judgment motion. Instead, the question of how the Form 1099-C should influence the outcome of this case is for a jury. Our proper course is simply to vacate and remand for trial.

I respectfully dissent.