Bank of Am., N.A. v Rolf (2020 NY Slip Op 06480)





Bank of Am., N.A. v Rolf


2020 NY Slip Op 06480


Decided on November 12, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
SHERI S. ROMAN
JEFFREY A. COHEN
JOSEPH J. MALTESE, JJ.


2018-11906
 (Index No. 38412/11)

[*1]Bank of America, N.A., etc., respondent,
v
Christopher Rolf, appellant, et al., defendants.


Catafago Fini LLP, New York, NY (Jacques Catafago, Tom M. Fini, and Sarah M. Dyer of counsel), for appellant.
Knuckles Komosinski & Manfro, LLP, Elmsford, NY (Adam S. Wynn of counsel), for respondent.



DECISION & ORDER
In an action to foreclose a mortgage, the defendant Christopher Rolf appeals from an order of the Supreme Court, Suffolk County (Howard H. Heckman, Jr., J.), dated July 25, 2018. The order, insofar as appealed from, granted those branches of the plaintiff's motion which were to confirm a referee's report of sale and for leave to enter a deficiency judgment against the defendant Christopher Rolf.
ORDERED that the order is affirmed insofar as appealed from, with costs.
On March 22, 2017, the Supreme Court entered a judgment of foreclosure and sale against the defendant Christopher Rolf (hereinafter the defendant), which, inter alia, confirmed a referee's report and directed the sale of the subject real property. On July 7, 2017, the property was sold at auction to the highest bidder for $1,223,794.32. In the referee's report of sale, the referee calculated the total amount due to the plaintiff to be $2,286,777.52 and calculated the amount of the deficiency to be $1,062,983.20, the difference between the total amount due and the auction sale price. The plaintiff moved, inter alia, to confirm the referee's report of sale and for leave to enter a deficiency judgment against the defendant, in the amount of $970,016.80 plus interest. In opposition, the defendant contended, among other things, that the motion was never properly served on the defendant's counsel of record.
By order dated July 25, 2018, the Supreme Court granted those branches of the plaintiff's motion which were to confirm the referee's report of sale and for leave to enter a deficiency judgment in the amount of $316,777.52, the difference between the total amount due to the plaintiff and the fair market value of the property. The defendant appeals.
The defendant contends that the branch of the plaintiff's motion which was to confirm the referee's report of sale was a "nullity" because the motion was not served on the defendant's counsel. This contention is without merit. RPAPL 1371(2) specifically permits a plaintiff to make a motion pursuant to RPAPL 1355(2) to confirm a referee's report of sale simultaneously with a motion pursuant to RPAPL 1371 for leave to enter a deficiency judgment, as the plaintiff did here. [*2]RPAPL 1371(2) also specifies the manner in which notice of such motions shall be served, and upon whom the notice shall be served, as follows: "Simultaneously with the making of a motion for an order confirming the sale, . . . the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct."
Generally, "[e]xcept where otherwise prescribed by law or order of court, papers to be served upon a party in a pending action shall be served upon the party's attorney" (CPLR 2103[b] [emphasis added]). Contrary to the defendant's contention, the plaintiff was not required to serve notice of the motion to confirm the referee's report of sale upon his attorney pursuant to CPLR 2103(b). RPAPL 1371(2) specifically authorizes that notice of the combined motions be served on either the party or the party's attorney.
Likewise, we agree with the Supreme Court's finding that the defendant was properly served pursuant to RPAPL 1371(2) and CPLR 308(4). Service pursuant to CPLR 308(4) "is a permissible means of 'personal service' of notice of an application for leave to enter a deficiency judgment, as required by RPAPL 1371(2)" (Citibank v Demadet, 243 AD2d 532, 533; see Greene Major Holdings, LLC v Trailside at Hunter, LLC, 148 AD3d 1317, 1320; Long Is. Sav. Bank v Yaloz, 289 AD2d 380, 381). CPLR 308(4) provides that where personal service under CPLR 308(1) and (2) "cannot be made with due diligence," service may be made by affixing the summons to the door of the defendant's "actual place of business, dwelling place or usual place of abode," and by mailing the summons either to the defendant's last known residence or actual place of business (CPLR 308[4]; see Greene Major Holdings, LLC v Trailside at Hunter, LLC, 148 AD3d at 1320; McSorley v Spear, 50 AD3d 652, 653). "Where service is effected pursuant to CPLR 308(4), . . . the plaintiff must demonstrate that service pursuant to CPLR 308(1) or (2) (personal service or residence service) could not be made with 'due diligence'" (Aurora Loan Servs., LLC v Gaines, 104 AD3d 885, 886-887, quoting CPLR 308[4] [internal quotation marks omitted]). "Since CPLR 308(4) does not define 'due diligence,' it has been interpreted and applied on a case-by-case basis" (Bank of Am., N.A. v Batson, 176 AD3d 771, 771; see U.S. Bank, N.A. v Cepeda, 155 AD3d 809, 810).
Here, the process server's affidavit of service reflects that, before affixing a copy of the notice and motion papers to the defendant's door on November 16, 2017, and mailing another copy to the defendant's residence on November 21, 2017, he made four attempts to effect personal service at the defendant's residence, at different times and on different days when the defendant could reasonably be expected to be home. The process server's affidavit also described the means he used to verify the defendant's address, by speaking over the intercom with an individual who acknowledged that he was the defendant. The affidavit constituted "prima facie evidence that the due diligence requirement was satisfied [and] that the process server properly affixed a copy of the [motion papers] to the door of the defendant's residence, and mailed a copy to the residence by first class mail" (Taron Partners, LLC v McCormick, 173 AD3d 927, 929 [citations omitted]; see Wells Fargo Bank, N.A. v Mauser, 180 AD3d 732).
"Ordinarily, a process server's affidavit of service establishes a prima facie case as to the method of service and, therefore, gives rise to a presumption of proper service" (Deutsche Bank Natl. Trust Co. v Yurowitz, 181 AD3d 646, 647 [internal quotation marks omitted]; see HSBC Bank USA v Archer, 173 AD3d 984, 985). "The defendant can overcome the presumption raised by the process server's affidavit of service with a sworn denial containing a detailed and specific contradiction of the allegations in the process server's affidavit" (Deutsche Bank Natl. Trust Co. v Yurowitz, 181 AD3d at 647 [internal quotation marks omitted]; see GMAC Mtge., LLC v Eberle, 172 AD3d 822, 823; US Bank N.A. v Cherubin, 141 AD3d 514, 515-516). However, "[w]here actual notice has been timely received, substantial compliance with [RPAPL 1371(2)] is all that is required" (Sarasota, Inc. v Homestead Acres at Greenport, 249 AD2d 290, 290-291 [internal quotation marks omitted]; see Putnam County Sav. Bank v Fishel, 110 AD3d 779, 780; Federal Fin. Co. v Public Adm'r, Kings County, 47 AD3d 881, 882).
Here, the defendant submitted affidavits in which the affiants denied hearing the buzzer on the days service was purportedly attempted, and averred that the defendant, who is a paraplegic, could not have reached the intercom to speak with the process server, as the process server had averred. However, the defendant admitted that he received a partial copy of the moving papers that had been left on his door. Timely actual notice was established based on the circumstances presented herein. Therefore, the record establishes that there was substantial compliance with RPAPL 1371(2), which was all that was required (see Sarasota, Inc. v Homestead Acres at Greenport, 249 AD2d at 290-291), and the Supreme Court correctly found that no hearing to determine the validity of service of process was necessary. Evidence of the process server's past wrongdoing was likewise insufficient to rebut the evidence of substantial compliance with RPAPL 1371(2).
We also agree with the Supreme Court's determination that the plaintiff's filing of a Form 1099-C with the Internal Revenue Service (hereinafter IRS) did not constitute a waiver of the plaintiff's right to seek a deficiency judgment and "provides no justification" for denying the branch of the plaintiff's motion which was for a deficiency judgment. The record shows that the plaintiff filed a 2017 IRS Form 1099-C (hereinafter Form 1099-C), labeled "Cancellation of Debt," listing the defendant as the debtor, and indicating that the "amount of debt discharged," is $372,030.24, approximately the amount of the deficiency judgment. A copy of the completed Form 1099-C was served on the defendant pursuant to 26 USC § 6050P(d)(1)-(2).
"The Internal Revenue Code ('IRC') sets forth certain reporting requirements . . . which the IRS regulations have implemented through the Form 1099-C filing requirement" (F.D.I.C. v Cashion, 720 F3d 169, 178 [4th Cir]), as follows: "[A creditor] that discharges an indebtedness of any person . . . must file an information return on Form 1099-C with the Internal Revenue Service. Solely for purposes of the reporting requirements of [the applicable statute and this regulation], a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred" (26 CFR 1.6050P-1[a] [emphasis added and citation omitted]).
Among the "identifiable events" that trigger the reporting obligation is "[a] cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness" (26 CFR 1.6050P-1[b][2][D]). This is the "identifiable event" indicated in the Form 1099-C filed by the plaintiff, and July 7, 2017, the date the public auction was held and the property was sold, is the "date of identifiable event" indicated by the plaintiff.
The defendant contends that, as "[a] small minority of the lower courts have held, . . . filing a Form 1099-C with the IRS constitutes prima facie evidence of an intent to discharge a loan, at which point the burden of persuasion shifts to the creditor to proffer evidence that it was filed by mistake or pursuant to another triggering event" (F.D.I.C. v Cashion, 720 F3d at 178). We disagree. Based upon the plain language of the applicable statute and regulation, "a creditor may be obligated to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated" (id.; see Wells Fargo Advisors, LLC v Mercer, 735 Fed Appx 23, 24 [2d Cir]). The IRS "treats the Form 1099-C as a means for satisfying a reporting obligation and not as an instrument effectuating a discharge of debt or preventing a creditor from seeking payment on a debt" and the IRS has noted in certain information letters that "nothing in the relevant statute or regulations prohibits collection following the filing of a Form 1099-C" (F.D.I.C. v Cashion, 720 F3d at 179; see IRS Info 2005-0207, 2005 WL 3561135; IRS Info 2005-0208, 2005 WL 3561136). Thus, "a Form 1099-C is not [, by itself,] evidence that a debt was discharged" (Wells Fargo Advisors, LLC v Mercer, 735 Fed Appx at 24). Moreover, here, it is clear from the actions of the plaintiff that it has not forgiven any part of the loan, and has no intention of doing so.
The defendant further contends that, because of the tax ramifications of filing a Form 1099-C, the plaintiff is equitably estopped from obtaining a deficiency judgment. A lender that files a Form 1099-C with the IRS also must furnish the same information to the borrower (see 26 USC [*3]§ 6050P[d][1]-[2]). "Gross income," as defined in the Internal Revenue Code, includes income from discharge of indebtedness (see 26 USC § 61[a][11]). A "small minority of the lower courts" have noted that "because filing a Form 1099-C has legal significance to the debtor's income tax liability, and because the debtor faces penalties or fines for failing to comply with the obligations imposed, it would be inequitable to permit a creditor to collect the debt after having received the benefit of the 'charge-off' of the debt from filing the Form 1099-C" (F.D.I.C. v Cashion, 720 F3d at 178, citing In re of Welsh, 2006 WL 3859233, 2006 Bankr LEXIS 3756 [Bankr ED Pa]; Amtrust Bank v Fossett, 223 Ariz 438, 439, 224 P3d 935, 936; Franklin Credit Mgt. Corp. v Nicholas, 73 Conn App 830).
Here, however, the defendant has not alleged that he reported to the IRS the $372,030.24 of purported "cancelled debt" as part of his gross income (see Wells Fargo Advisors, LLC v Mercer, 735 Fed Appx 23; cf. In re Lukaszka, 2017 Bankr LEXIS 2196 [Bankr ND Iowa]; In re Reed, 492 BR 261, 263, 272 [Bankr ED Tenn]; In re Welsh, 2006 WL 3859233, 2006 Bankr LEXIS 3756; In re Crosby, 261 BR 470, 472 [Bankr D Kan]). Therefore, under the circumstances here, we agree with the Supreme Court's determination that the defendant's equitable estoppel contention is without merit.
Accordingly, we affirm the order insofar as appealed from.
LEVENTHAL, J.P., ROMAN, COHEN and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court