**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1776

_____

JOHN GERICKE, Individually and on behalf of all others similarly situated,
Appellant

v.

TRUIST d/b/a Branch Banking and Trust Company; JOHN DOES 1-10

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-20-cv-03053)
District Judge:  Honorable Renee M. Bumb

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 5, 2022

_____

Before:  CHAGARES, <u>Chief Judge</u>, GREENAWAY, JR. and PORTER, <u>Circuit Judges</u>

(Opinion filed: June 14, 2022)

_____

OPINION[*]

_____

---

[*]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Chief Judge.

Plaintiff John Gericke filed a complaint asserting violations of New Jersey consumer protection laws based on defendant Truist Bank's ("Truist") issuance of an Internal Revenue Service ("IRS") Form 1099-C for cancellation of debt. After issuing the Form 1099-C, Truist notified Gericke that it intended to continue efforts to collect on a judgment against Gericke's property. Gericke argues this was deceptive and that Truist was required to cancel or "actually discharge" his obligation to repay the underlying judgment upon issuance of the Form 1099-C. The plain language of the relevant IRS regulations, however, forecloses Gericke's argument. We will therefore affirm the order of the District Court dismissing the putative class action complaint.

I.

We write primarily for the parties and recite only the facts essential to our decision. In March 2012, Truist's predecessor obtained a judgment in the amount of $244,248.49 against Gericke and his wife.[1] After Gericke failed to satisfy the judgment, Truist issued an IRS Form 1099-C to Gericke for the 2018 tax year, indicating that $199,427.80 was the "[a]mount of the debt discharged." Appendix ("App.") 70.

Truist's obligation to file a Form 1099-C stems from the Internal Revenue Code and the corresponding IRS regulations. Under 26 U.S.C. § 6050P(a), "[a]ny applicable

---

[1] Gericke initially took out a consumer installment loan from Susquehanna Bank, which obtained the judgment. Susquehanna Bank merged with Branch Banking and Trust Company, who subsequently became Truist, the defendant in this action. For ease of reference, this opinion uses "Truist" to refer to actions taken by both Truist and its predecessors.

entity which discharges (in whole or in part) the indebtedness of any person during any calendar year" shall file an information return. The regulations implementing § 6050P set forth when a creditor must file a Form 1099-C to satisfy the information return requirement:

> [A]ny applicable entity . . . that discharges an indebtedness of any person of . . . at least $600 during a calendar year must file an information return on Form 1099–C with the Internal Revenue Service. <u>Solely for purposes of the reporting requirements of section 6050P and this section</u>, a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an <u>identifiable event</u> described in paragraph (b)(2) of this section, <u>whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.</u>

26 C.F.R. § 1.6050P–1(a)(1) (emphasis added). Paragraph (b)(2) of this regulation lists seven "identifiable events," including the debtor filing for bankruptcy, the expiration of the statute of limitations for collection of the debt, settlement of the debt, and a creditor's decision "to discontinue collection activity and discharge debt." 26 C.F.R. § 1.6050P-1(b)(2)(i).

After Truist filed the Form 1099-C, Gericke's counsel and Truist exchanged correspondence in which Gericke attempted to settle and discharge the judgment. Truist noted that Gericke's "[Form] 1099-C was filed in accordance with the IRS regulations . . . to report an unpaid debt as income. The bank's filing of the [Form] 1099-C in compliance with IRS regulations does not release the client's judgment as it has not been settled or paid." App. 76.

Gericke initially filed this putative class action in New Jersey state court, asserting claims under the New Jersey Consumer Fraud Act (the "CFA") and the New Jersey

3

Truth-in-Consumer Contract, Warranty and Notice Act (the "TCCWNA").  Truist

removed the action to the United States District Court for the District of New Jersey, and

the District Court thereafter granted Truist's motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6).  Gericke timely appealed.

## II.[2]

We review a district court's grant of a motion to dismiss de novo and may affirm

on any ground supported by the record.  Watters v. Bd. of Sch. Dirs. of City of Scranton,

975 F.3d 406, 412 (3d Cir. 2020).  On a Rule 12(b)(6) motion, "we accept all factual

allegations in the complaint as true and construe those facts in the light most favorable to

the plaintiff[ ]."  Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018).

In determining whether the plaintiff has stated a claim, we assess whether the complaint

"contain[s] sufficient factual allegations, taken as true," to plausibly allege a claim on its

face.  Id. (citation and quotation marks omitted); see also Schmidt v. Skolas, 770 F.3d

241, 249 (3d Cir. 2014) (noting that we may also consider exhibits attached to the

complaint on a Rule 12(b)(6) motion).

## III.[3]

Gericke alleges that "[c]reditors such as [Truist] should not send borrowers such

as [Gericke] a 1099-C [F]orm unless the debt is really canceled by [Truist].  If, after

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.

[3] Judge Porter concurs in the judgment.  He would vacate the District Court's order dismissing the case for failure to state a claim and remand the case to the District Court for dismissal under Rule 12(b)(1) because in his view Gericke lacks standing as he has suffered no concrete injury fairly traceable to Truist.  The majority concludes, however,

4

issuing a 1099-C [F]orm, creditors . . . fail to confirm for debtors . . . that the debt is forgiven, they should rescind the 1099-C [F]orm. Otherwise, the unrescinded 099-C [F]orm [sic] violates applicable federal regulations." App. 41; Gericke Br. 10. Gericke asserts that Truist's actions constitute an "unlawful practice" under the CFA, N.J. Stat. Ann. § 56.8–1, et seq. He also contends that the issuance of the Form 1099-C constitutes a "writing contain[ing] a provision that 'violates [a] clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee' as established by State or Federal law" under the TCCWNA. Spade v. Select Comfort Corp., 181 A.3d 969, 976 (N.J. 2018) (quoting N.J. Stat. Ann. § 56:12–15).

We disagree, as the plain language of 26 C.F.R. § 1.6050P-1 forecloses Gericke's argument. The regulations provide that "[s]olely for the purposes of the reporting requirements of section 6050P and this section, a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event . . . ." 26 C.F.R. § 1.650P-1(a)(1). And an identifiable event may occur, requiring the issuance of a Form 1099-C, "whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." Id. Based on the text of the regulation, the filing of a Form 1099-C is a reporting requirement that does not depend on whether the debt has been "actually discharged," or the debtor has actually been released from his obligations on the underlying debt. The satisfaction of this reporting requirement, additionally, does not operate to forgive or extinguish a debtor's obligations

---

that Gericke has alleged an injury in fact based on his incurring or paying an improper tax liability, or alternatively, having to repay a debt that should be considered satisfied.

to repay the debt at issue.  We therefore conclude that contrary to Gericke's argument, a creditor is not necessarily required to cancel or actually discharge the underlying debt upon issuance of a Form 1099-C.

The only precedential Court of Appeals' decision to interpret 26 C.F.R. § 1.6050P-1 reached a similar conclusion.  See F.D.I.C. v. Cashion, 720 F.3d 169 (4th Cir. 2013).  Relying on the "plain language of the regulation," the Court of Appeals for the Fourth Circuit concluded that the "filing [of] a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred."  Id. at 179.[4]

Gericke argues that 2016 amendments to IRS regulation 26 C.F.R. § 1.6050P-1, which removed an eighth identifiable event known as the "36-month rule," now require a creditor to cancel or "actually discharge" the underlying debt upon issuance of a Form 1099-C.  See Gericke Br. 18 (citing Removal of the 36-month Non-Payment Testing

---

[4] The court in Cashion held that the issuance of a Form 1099-C, standing alone, was insufficient at the summary judgment stage to show that the debt in question was in fact canceled or actually discharged.  Id. at 181.  While noting that the majority of courts to consider the issue had taken a similar approach, it recognized that a minority viewed the "filing [of] a Form 1099–C with the IRS [as] constitut[ing] prima facie evidence of an intent to discharge a loan."  Id. at 178.  District courts in this circuit have either followed Cashion, see, e.g., Walker v. Ocwen Loan Servicing, LLC, 2017 WL 2957933, No. 16-9157, at *2–3 (D.N.J. July 11, 2017), or concluded that the allegations plausibly alleged cancellation or actual discharge at the motion to dismiss stage without endorsing either the majority or minority approach, see, e.g., Lewis v. Synchrony Bank, 2021 WL 307546, No. 20-cv-3090, at *3 (D.N.J. Jan. 28, 2021).  Given Gericke's framing of the argument – that issuance of the Form 1099-C requires cancellation or actual discharge of the underlying debt – we do not need to decide between following the approach in Cashion and the minority view.

Period Rule, 81 Fed. Reg. 78908 (Nov. 10, 2016) (IRS Bulletin No. 2016-48)). The 36-month rule provided a rebuttable presumption that an identifiable event had occurred if a creditor did not receive a payment during a 36-month "testing period." 81 Fed. Reg. at 78909. The preamble to the 36-month rule amendment further notes that "[t]he first seven identifiable events are specific occurrences that typically result from an actual discharge of indebtedness," while the 36-month rule "may not result from an actual discharge of indebtedness." Id. Those "seven identifiable events" are the ones listed under the current regulations.

The District Court rejected this argument because the 36-month rule applied to a Form 1099-C with an "identifiable event code" of "H," while the form at issue was coded with the letter "G." The identifiable event code of "G" corresponds to a decision or policy to discontinue collection by the creditor under § 1.6050P–1(b)(2)(i)(G). We agree with the District Court that the 2016 amendments do not affect the outcome in this action. While the IRS's view, as expressed in the preamble to the 36-month rule amendments, supports that issuance of a Form 1099-C generally coincides with actual discharge, those amendments did not modify 26 C.F.R. § 1.6050P-1 in other important respects. As we have explained above, the IRS regulations explicitly create a reporting requirement and provide that a creditor may have to file a Form 1099-C "whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred." 26 C.F.R. § 1.6050P-1(a)(1). The plain language of the regulation, therefore, remains irreconcilable with Gericke's argument that a creditor cannot issue a Form 1099-C unless it cancels or actually discharges the underlying debt.

7

Because we conclude that issuance of a Form 1099-C does not require cancellation or actual discharge of the underlying debt, we agree with the District Court that Gericke's CFA and TCCWNA claims fail as a matter of law.  We therefore find it unnecessary to consider Truist's remaining arguments for dismissal.[5]

IV.

For the foregoing reasons, we will affirm the District Court's order.

_____

[5] We take no position on, and nothing in this opinion express a view on, whether Gericke must recognize cancellation of indebtedness income under 26 U.S.C. § 61 due to Truist's issuance of a Form 1099-C.