Reiver *v.* Safeguard Precision Products,
Inc., Appellant.

Argued December 8, 1975. Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT,
and SPAETH, JJ.

*Raymond T. Cullen, Jr.*, with him *Morgan, Lewis & Bockius*, for appellant.

*Richard J. Gordon*, with him *Dilworth, Paxson, Kalish & Levy*, for appellee.

OPINION BY JACOBS, J., June 28, 1976:

The facts in this case are not in dispute, and are summarized in the opinion of the lower court:

"The facts established that the plaintiff's decedent, Samuel Reiver, was issued Life Insurance Policy 31-B-001 by Postal Life Insurance Company, effective August 15, 1960. Said policy, as amended, was assumed by Bankers Security Life Insurance Society and designated Policy No. 329,024 on August 15, 1969.

"For several years prior to 1968, Samuel Reiver had been General Manager of Penn El Service Company. This company was acquired by Safeguard Precision Products, Inc. [Safeguard, defendant-appellant] in February 1968, and at that time Samuel Reiver was to be employed as General Manager of the Penn El Service Company, a division of Safeguard Precision Products, Inc., for a period of five (5) years. Accordingly, an employment agreement[1] was executed on February 16, 1968, between

---

1. This agreement was amended on February 16, 1969, and it is the agreement, as amended, which is the instrument of import in this case. The agreement, as amended, reads in pertinent part:

"For all services rendered by Employee (Samuel Reiver) under this agreement, Employer (Safeguard) agrees to pay Employee a salary of Fifty-Thousand ($50,000) Dollars per annum for one (1) year and Twenty-five Thousand ($25,000) Dollars per annum for the following four (4) years, payable in equal monthly installments, less normal withholding at the end of each month. *In addition to the above compensation Employer shall pay the premium on insurance policy owned by Employee or which shall be owned by Employee in the face amount of $249,700.* It is agreed that the total premium to be paid shall be the gross premium without deductions for dividends, interest, increases in cash surrender value or otherwise, with the total annual premium not to exceed $12,000. Within thirty (30) days after Employee's death, Employer agrees to pay to a beneficiary designated by Employee in writing delivered to Employer, or in the event no such writing is received, to Employee's Estate. the sum of Twenty-five Thousand ($25,000) Dollars, regardless of when Employee's death occurs and regardless of whether at the time of death Employee is in the

Samuel Reiver and the defendant, in which the defendant undertook to employ Plaintiff's decedent as General Manager of its Penn El Service Company, for which he was to receive $50,000. compensation for the first year and $25,000. per annum for the next four years. Likewise, commencing on February 16, 1968, the Defendant undertook to pay the premiums on the decedent's insurance policy [*see* note 1 supra]. Thus the Defendant paid the premiums on the decedent's life insurance policy for the years 1968, 1969 and 1970. *The Defendant had the option of paying the premium upon Reiver's life insurance policy to pay the premiums semiannually, quarterly or yearly, and that the Defendant chose to pay said premiums on yearly basis, such amount approximating $12,000. per annum.*

"Samuel Reiver died December 23, 1970, and thereafter the insurance company paid to the decedent's beneficiary the face amount of the policy, $249,700., less the amount due said insurance company by reason of a loan to decedent in the amount of $69,416.60, plus an interest refund of $2,144.97 and a return premium of $6,602.68. The return premium of $6,602.68 paid to the Plaintiff by the Bankers Security Life Insurance Society represents the portion of the premium for the policy year commencing on August 15, 1970, applicable to the period from December 23, 1970 to August 15, 1971, the entire amount of which had been prepaid by the defendant.[2]

---

employ of the Employer." *See* Printed Record at 50a, 54a-55a (emphasis added).

2. The cover page of the insurance policy, introduced into evidence *by Safeguard* [*See* New Matter at paragraph 10, Printed Record at 7a: "A true and correct copy of the cover page of said policy, as amended, is attached hereto, made part hereof, and marked Exhibit C."] provided in pertinent part:

"The Company will include in any death benefit proceeds *the portion of any paid premium applicable to the policy month or*

"Plaintiff retained the death benefit proceeds from the insurance policy plus interest and the return premium. Thereafter Defendant made claim to Plaintiff for the payment of the returned premium in the amount of $6,602.68. Plaintiff refused, whereupon Defendant, still owing the decedent's beneficiary $25,000., in accordance with the amended Employment Agreement, [*see* note 1 supra], deducted $6,602.68, as the amount of set-off between the amount of the returned premium claimed by the Defendant and the $25,000. owed to Plaintiff as named beneficiary of Samuel Reiver, as per Samuel Reiver's notification of April 29, 1969. [*See* note 1 supra.] The Defendant paid Plaintiff the sum of $18,397.32, precipitating this issue into Court." (Emphasis added.) (Footnote added.)

The plaintiff-appellee "precipitated this issue into Court" by filing a Complaint in Assumpsit to enforce her right to the entire $25,000 death benefit to which she was entitled under the employment agreement as amended. *See* note 1 supra. Safeguard, in *New Matter* set up the following defense:

"18. Plaintiff was *unjustly enriched* by the retention of said returned premium of $6,602.68.

"19. Defendant has *setoff* the said amount of $6,602.68 against the amount of $25,000.00 otherwise due plaintiff from defendant pursuant to the Employment Agreement as amended, and has paid to plaintiff the sum of $18,397.32." Printed Record at 8a.

The court below, found for the plaintiff-appellee. The search of the authorities, in Pennsylvania and elsewhere, by the court below, by this Court and by counsel,[3] has not

---

*months subsequent to the policy month in which the death of the Insured occurred.*" Printed Record at 56a (emphasis added).

3. Safeguard cites *only Dworzcak v. Metropolitan Life Ins. Co.*, 9 D. & C.2d 614 (C.P. Lack. 1955) for the proposition that one may recover premium payments on a life insurance policy which were made

revealed any analogous cases. Safeguard's defense is unjust enrichment, a doctrine which is inapplicable to the case at bar. Try as we might, we are unable to find a contract theory, either in law or in equity, or a theory of insurance law to support the defense of unjust enrichment. "It is well established that volunteers have no right to reimbursement." *Gaul v. McLaughlin*, 207 Pa. Superior Ct. 434, 436, 217 A.2d 757, 758 (1966). Safeguard had the *option* to make premium payments on a monthly, quarterly, semi-annual, or yearly basis. It *chose* to pay the premiums on a yearly basis. "[T]he mere fact that appellant did benefit [the wife] is not of itself sufficient to require the latter to make restitution therefor." *Home Owners' Loan Corp. v. Murdock*, 150 Pa. Superior Ct. 284, 289, 28 A.2d 498, 500, *allocatur refused*, 150 Pa. Superior Ct. *xxiii* (citation omitted) (1942).[4] It is inconceivable to us that Safeguard made premium payments, totally unaware of the provisions of the insurance policy. The employment agreement, *see* note 1 supra, did not specify the payment options available to Safeguard, to-wit, monthly, quarterly, semi-annual or yearly payment options. In *New Matter*, Safeguard states: "13. For the policy year commencing August 15,

on behalf of a deceased-insured. The case is inapposite. In *Dworzcak*, supra the individual who made the premium payments was specifically "promis[ed] [by the insured and an agent of the insurer] ... reimbursement to be secured by an assignment of the policy." *Id.* at 614. Instantly, Safeguard *voluntarily* made the "prepayment" in the face of a provision in the insurance policy which made all "unearned premiums" payable to the beneficiary. *See* note 2 supra.

4. The Restatement of Restitution §1, comment c at 13 (1937), cited with approval in *Home Owners' Loan Corp. v. Murdock*, 150 Pa. Superior Ct. 284, 289, 28 A.2d 498, 500, *allocatur refused*, 150 Pa. Superior Ct. *xxiii* (1942), provides in pertinent part:

"The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.... [O]ne who ... voluntarily pays money which he knows he does not owe confers a benefit; [and is not] entitled to restitution."

1970, defendant *elected*[5] to pay the premium at the annual rate of $11, 318.90" (Emphasis added.) (Footnote added.). In order for Safeguard to make this *election* it must have been aware of its options, an awareness which is only obtained from knowledge of the insurance policy provisions.

Moreover, there is another reason why the defense of unjust enrichment is herein not applicable. The plaintiff-appellee has not been *unjustly* enriched. She is in possession of money which was rightfully paid to her by the insurance company under the *express terms of the insurance policy. See generally Roman Mosaic & Tile Co.,*

---

5. We recognize that it was sound business judgment to pay the premiums on a yearly basis in that there was a saving of some $600.00 in so doing. In its brief on appeal Safeguard submits: "Permitting plaintiff to retain the unearned premium gives a clear message to other employers who prepay insurance premiums: do not prepay premiums lest the amount of your prepayment be forfeited in the event the insured dies prior to the last day of the policy year. Thus, both employers and insurance companies will be denied the administrative convenience of making prepayment in lump sums on an annual basis." Brief for Appellant at 8. Quite to the contrary, the clear message of our holding today is for the employer to make certain that the insurance policy contains a provision that unearned premiums be returned to the employer and not the beneficiary or the decedent's estate.

Moreover, without more in a manner of justification, we do not believe that the desire to save money constitutes a sufficient legal basis upon which to support the claim of unjust enrichment. The Restatement of Restitution, §112 (1937) provides:

"§112. General Rule.

A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action *necessary for the protection of the interests of the other or of third persons.*" (Emphasis added.)

Monthly premium payments were all that was necessary to protect the "interests" of all parties involved in the case at bar. Monthly premium payments would have fulfilled Safeguard's obligations under the employment agreement, would have protected the employee's and would have protected the plaintiff-appellee's interest in the insurance proceeds.

*Inc. v. Vollrath,* 226 Pa. Superior Ct. 215, 313 A.2d 305 (1973).

While Safeguard may have a persuasive basis for requesting special consideration, its appeal is at best superficial. We cannot escape the conclusion that the facts preclude any right to recovery from the plaintiff-appellee.

Judgment affirmed.

HOFFMAN, J., concurs in the result.