450 A.2d 984

**James L. MARTIN, Appellant,**

v.

**LITTLE, BROWN AND COMPANY.**

Superior Court of Pennsylvania.

Argued May 26, 1981.

Filed Sept. 4, 1981.

Reargument Denied Oct. 12, 1982.

Petition for Allowance of Appeal
Denied Dec. 22, 1982.

426

James L. Martin, appellant, in pro. per.

Joseph F. Roda, Lancaster, for appellee.

Before WICKERSHAM, McEWEN and WIEAND, JJ.

WIEAND, Judge:

This appeal was taken from an order sustaining preliminary objections in the nature of a demurrer to appellant's pro se complaint in assumpsit. The trial court held that a contract had not been made and that there could be no recovery on quantum meruit where appellant had volunteered information which enabled appellee, a publisher of books, to effect a recovery against a third person for copyright infringement. We agree and, accordingly, affirm.

428

The averments of the complaint [1] disclose that on September 28, 1976, the appellant, James L. Martin, directed a letter to Bantam Books, Inc. in which he advised the addressee that portions of a paperback publication entitled "How to Buy Stocks" had been plagiarized by the authors of a later book entitled "Planning Your Financial Future." Appellant's letter offered to provide a copy of the book, in which appellant had highlighted the plagiarized passages, with marginal references to the pages and paragraphs of the book from which the passages had been copied. By letter dated October 21, 1976 and signed by Robin Paris, Editorial Assistant, the appellee, Little, Brown and Company, Inc., invited appellant to send his copy of "Planning Your Financial Future." This was done, and appellee acknowledged receipt thereof in writing. Thereafter, appellant made inquiries about appellee's investigation but received no response. Appellant was persistent, however, and upon learning that appellee had agreed with his assertions and was pursuing a claim of copyright infringement, he demanded compensation for his services. Appellee denied that it had contracted with appellant or was otherwise obligated to compensate appellant for his work or for his calling the infringement to the publisher's attention. Nevertheless, appellee offered an honorarium in the form of a check for two hundred dollars, which appellant retained but did not cash. Instead, he filed suit to recover one-third of the recovery effected by appellee.

These facts and all reasonable inferences therefrom have been admitted by appellee's demurrer. *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Buchanan v. Brentwood Federal Savings & Loan Association*, 457 Pa. 135, 139, 320 A.2d 117, 120 (1974). In determining whether they

1. Appellant failed to attach to his complaint copies of correspondence upon which he relied to establish a cause of action, as required by Pa.R.C.P. No. 1019(h). Although such copies were subsequently attached to the brief which appellant filed in the trial court, they were not a part of the complaint and not entitled to be considered in determining the sufficiency thereof. We have examined them solely for the purpose of determining whether appellant should be granted leave to file an amended complaint.

are sufficient to state a cause of action we are guided by the rule that a demurrer may be sustained only in clear cases, and all doubts must be resolved in favor of the sufficiency of the complaint. *Gekas v. Shapp,* supra, 469 Pa. at 6, 364 A.2d at 693; *Clevenstein v. Rizzuto,* 439 Pa. 397, 401, 266 A.2d 623, 625 (1970).

The facts alleged in the complaint are insufficient to establish a contractual relationship between appellant and appellee. Appellant's initial letter did not expressly or by implication suggest a desire to negotiate. Neither did appellee's letter of October 21, 1976, which invited appellant to send his copy of the offending publication, constitute an offer to enter a unilateral contract. It was no more than a response to an initial letter by appellant in which he notified appellee of a copyright infringement and expressed a willingness to forward a copy of the infringing work in which he had highlighted copied portions and cited pages of appellee's work which had been copied. Appellant's letter did not suggest that he intended to be paid, and appellee's response did not contain an offer to pay appellant if he forwarded his copy of the infringing work. In brief, payment to appellant was not discussed in any of the correspondance which preceded the forwarding of appellant's work to appellee.

"A contract, implied in fact, is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances. *Cameron v. Eynon,* 332 Pa. 529, 3 A.2d 423 (1939)." *Home Protection Building & Loan Association Case,* 143 Pa.Super. 96, 98, 17 A.2d 755, 756 (1941). An implied contract is an agreement which legitimately can be inferred from the intention of the parties as evidenced by the circumstances and "the ordinary course of dealing and the common understanding of men." *Hertzog v. Hertzog,* 29 Pa. 465, 468 (1857). "Generally, there is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary. A promise to pay

the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service. A promise to pay for services can, however, only be implied when they are rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefited. The service or other benefit must not be given as a gratuity or without expectation of payment, and the person benefited must do something from which his promise to pay may be fairly inferred." *Home Protection Building & Loan Association Case,* supra, 143 Pa. at 98–99, 17 A.2d at 756–57, citing 12 Am.Jur., Contracts, § 5. See also: *Irvine Estate,* 372 Pa. 110, 92 A.2d 544 (1952); *Gibb's Estate,* 266 Pa. 485, 110 A. 236 (1920). When a person requests another to perform services, it is ordinarily inferred that he intends to pay for them, unless the circumstances indicate otherwise. Restatement Restitution § 107(2) (1937). However, where the circumstances evidence that one's work effort has been voluntarily given to another, an intention to pay therefor cannot be inferred. In the instant case, the facts alleged in the complaint disclose a submission of information from appellant to appellee without any discussion pertaining to appellee's payment therefor. Clearly, there was no basis upon which to infer the existence of a unilateral contract.

■■■■ Similarly, there is no factual premise to support a finding that appellee is entitled to recover in quasi-contract for the information supplied by appellant. Where one person has been unjustly enriched at the expense of another he or she must make restitution to the other. *DeGasperi v. Valicenti,* 198 Pa.Super. 455, 457, 181 A.2d 862, 864 (1962). However, unjust enrichment is the key to an action for restitution. *Myers-Macomber Engineers v. M.L.W. Construction Corp., et al.,* 271 Pa.Super. 484, 414 A.2d 357, 360 (1979). The vehicle for achieving restitution is a quasi-contract, or contract implied in law. "Unlike true contracts, quasi-contracts are not based on the apparent intention of

the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Schott v. Westinghouse Electric Corporation,* 436 Pa. 279, 290, 259 A.2d 443, 449 (1969), quoting Restatement (Second) of Contracts, § 5, comment b. at 24. "Quasi-contracts may be found in the absence of any expression of assent by the party to be charged and may indeed be found in spite of the party's contrary intention." *Schott v. Westinghouse Electric Corporation,* supra, 436 Pa. at 290–91, 259 A.2d at 449. To sustain a claim of unjust enrichment, it must be shown by the facts pleaded that a person wrongly secured or passively received a benefit that it would be unconscionable to retain. *Brereton Estate,* 388 Pa. 206, 212, 130 A.2d 453, 457 (1957); *Crossgates Realty, Inc. v. Moore,* 479 Pa.Super. 247, 420 A.2d 1125, 1127–8 (1980); *Roman Mosaic & Tile Co., Inc. v. Vollrath,* 226 Pa.Super. 215, 218, 313 A.2d 305, 307 (1973).

■■■■ As a general rule, volunteers have no right to restitution. *Reiver v. Safeguard Precision Products, Inc.,* 240 Pa.Super. 572, 576, 361 A.2d 371, 373 (1976); *Gaul v. McLaughlin,* 207 Pa.Super. 434, 436, 217 A.2d 757, 758 (1966); Restatement, Restitution § 1, comment (c). Appellant was a volunteer. It was he who made the unsolicited suggestion that he would be willing to submit to appellee his copy of "Planning Your Financial Future" with notations to show which portions had been purloined from "How to Buy Stocks." His offer to do so was not conditioned upon payment of any kind. He did not suggest, either expressly or by implication, that he expected to be paid for this information or for time spent in reducing the same to writing. Thus, the facts averred in the complaint establish that he was purely a volunteer and cannot properly be reimbursed for unjust enrichment.[2]

**2.** The parties have not briefed and our decision makes it unnecessary that we consider the damages which appellant would otherwise be entitled to recover. It is clear, however, that such damages are measured by the reasonable value of services rendered and not by a percentage of the recovery achieved by appellee as a result of the copyright infringement first observed by appellant. See: *Pulli v.*

Finally, appellant's complaint contains a count in trespass for intentional infliction of mental distress. The basis of this claim is an alleged statement by appellee's counsel that if appellant instituted suit, a counterclaim would be filed for abuse of process.

The Restatement (Second) of Torts, in section 46, provides: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, . . . ." Under this rule, "[l]iability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.' " *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 383, 368 A.2d 770, 773 (1976), quoting Restatement (Second) of Torts, § 46, comment d. See also: *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970); *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963).

The mere threat of a legal counterclaim, even if entirely lacking in merit, will not generally satisfy the strict standard required to make out a case of outrageous conduct. The adversary nature of litigation invariably involves a turbulent contest of wills. Appellant, a law student who threatened to avail himself of the judicial process to assert a claim, cannot properly complain when his adversary threatens to file a counterclaim. This did not give rise to an action for the emotional distress, if any, which appellant suffered when he learned that a new dimension would be added to the litigation. The claim was properly dismissed.

Order affirmed.

*Warren National Bank,* 488 Pa. 194, 412 A.2d 464 (1979); *Lach v. Fleth,* 361 Pa. 340, 64 A.2d 821 (1949).