J-A02031-15

2015 PA Super 89

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES GIANNANTONIO | |
| Appellant | No. 1669 EDA 2014 |

Appeal from the Order  May 7, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-MD-000712-2013

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

OPINION BY PANELLA, J.                    **FILED APRIL 20, 2015**

In June 2005, Appellant, James Giannantonio, entered into a negotiated plea agreement in federal court to child pornography charges, and served a term of incarceration.  Because of his conviction, Giannantonio was required to comply with applicable state laws regarding sex offender registration after his release from prison.  At the time of his release in 2007, Pennsylvania's Megan's Law III required Giannantonio to register with the Pennsylvania State Police ("PSP") for ten years.  In 2012, however, Pennsylvania's Sex Offender Registration and Notification Act ("SORNA")[1]

_____

[1] SORNA, codified at 42 Pa.C.S.A. §§ 9799.10-9799.41, became effective on December 20, 2012.  In this Opinion, we refer to this statute as "SORNA." Pennsylvania courts have also referred to the current statute as "Megan's Law IV," "Act 111 of 2011," "Adam Walsh Child Protection and Safety Act," and the "Adam Walsh Act." ***See***, ***e.g.***, ***Commonwealth v. M.W.***, 39 A.3d 958, 968 (Pa. 2012) (Baer, J., concurring); ***Coppolino v. Noonan***, 102
*(Footnote Continued Next Page)*

became effective and Giannantonio's required registration period changed from ten years to fifteen years. He commenced the instant action in June 2013, requesting that the trial court enter an order barring application of SORNA to his case, arguing that it was not in effect at the time of his release. The trial court denied his petition and this timely appeal followed.

Giannantonio raises two primary issues on appeal. First, whether an implied contract existed between Giannantonio and the Commonwealth as a result of his federal plea agreement that bars the application of SORNA to his conviction; and, second, whether SORNA, as applied to Giannantonio, violates the *ex post facto* provision of the United States Constitution.[2] We affirm.

Our legal discussion necessitates a more detailed procedural history of the case and a review of the relevant provisions of SORNA. In June 2005, with the assistance of counsel, Giannantonio pled guilty in federal court to one count of the crime of possession of child pornography, 18 U.S.C.A. §

---

*(Footnote Continued)*

A.3d 1254 (Pa. Cmwlth. 2014); **Commonwealth v. Partee**, 86 A.3d 245, 246 (Pa. Super. 2014); **Commonwealth v. Hainesworth**, 82 A.3d 444, 445 (Pa. Super. 2013), *appeal denied*, 95 A.3d 276 (Pa. 2014).

[2] Giannantonio makes no argument with regard to Article I, Section 17 of the Pennsylvania Constitution, which also prohibits *ex post facto* laws. This is of no significance because our Supreme Court has previously declined to hold that this provision of the Pennsylvania Constitution imposes any greater protections than Article I, Section 10 of the United States Constitution. **See Commonwealth v. Gaffney**, 733 A.2d 616, 622 (Pa. 1999).

2252A(a)(4)(b). The United States District Court subsequently sentenced Giannantonio to incarceration in a federal penitentiary for a period of one year and one day, to be followed by three years of supervised release. The federal court's judgment order included a standard list of five requirements for supervised release, each followed by a box to be checked. Giannantonio's judgment order contained the following standard paragraph, which was not checked:

> The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check here).

*Id*., at 3.

The federal order is devoid of any reference to an agreement with either federal prosecutors or the Commonwealth of Pennsylvania regarding state registration following release from prison.

After his release from prison in May 2007, Giannantonio re-established residency in Pennsylvania. On June 20, 2007, he began registering with the PSP as required by Megan's Law III, then in effect.[3] The relevant provisions of Megan's Law III required Giannantonio to register annually as a sex-offender for ten years.[4]

------------------------------

[3] 42 Pa.C.S.A. § 9795.2(b)(4) (expired).

[4] 42 Pa.C.S.A. § 9795.2(b)(4)(iii) (expired).

The Pennsylvania General Assembly passed SORNA in 2011 and the governor signed it into law on December 20, 2011. The passage of SORNA brought Pennsylvania into compliance with the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16991, and provides a means for the public and law enforcement officials to obtain information on sex offenders. SORNA includes legislative findings and a declaration of policy. It explains that the "Commonwealth's laws regarding registration of sexual offenders need to be strengthened." 42 Pa.C.S.A. § 9799.11(a)(2). "The Adam Walsh Child Protection and Safety Act of 2006 provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens of this Commonwealth." *Id*.

SORNA expanded the list of offenses requiring registration, and grouped offenders into one of three "Tiers," depending on the severity of the offense. *See* 42 Pa.C.S.A. § 9799.14(a)-(d). The legislation changed the mandatory registration periods for adults to fifteen years, twenty-five years, and lifetime, depending upon the offense and Tier classification. *See* 42 Pa.C.S.A. § 9799.15(a). Offenders classified in Tier I are required to register in person annually with the PSP, *see* 42 Pa.C.S.A. § 9799.15(e)(1), and provide the information listed in 42 Pa.C.S.A. § 9799.16(b). When it became effective, SORNA applied to individuals already required to register, and anyone who was already subject to registration was to "receive credit

for any time registered with the PSP prior to December 20, 2012." 42 Pa.C.S.A. § 9799.10(4). *See also* 42 Pa.C.S.A. § 9799.15(a.1)(1). The prior registration requirements of Megan's Law III expired when SORNA became effective on December 20, 2012.

On December 3, 2012, because Giannantonio was already subject to registration, the PSP notified him of the applicable changes and, pursuant to SORNA, classified him as a Tier I sex-offender. *See* 42 Pa.C.S.A. § 9799.14(b)(13). This classification requires Giannantonio to register annually for a period of fifteen years, *see* 42 Pa.C.S.A. § 9799.15(a)(1) and (e), thus changing his registration end date from June 2017 to June 2022.

In response to the notification, Giannantonio filed, through counsel, a "Petition to Enforce Implied Contract and/or For Writ of Habeas Corpus and/or For Exemption from Applicability to Continue to Re-Register Under Pennsylvania's 'New' Megan's Law as a 15-year Registrant," in the Court of Common Pleas of Delaware County. The petition requested an exemption from SORNA's registration requirements. The trial court held a hearing on January 7, 2014, during which Giannantonio testified that he had pled guilty in exchange for a term of one and a half years' incarceration followed by three years' supervision. He acknowledged that he had been aware when he entered the plea that upon his release from prison, he would be required to register as a sex offender pursuant to the applicable law then in effect in the state in which he chose to reside. *See* Notes of Testimony Hearing ("N.T."),

1/7/14, at 7-8. Giannantonio was the sole witness to testify at the hearing. Significantly, he did not offer into evidence a written plea agreement, the notes of testimony from the federal proceedings, or evidence from the attorney who had assisted him in negotiating the federal plea. *See* Trial Court Opinion, dated 7/14/14, at 14. The trial court denied the petition. This timely appeal followed.

We will reverse a denial or grant of a habeas corpus petition only for a "manifest abuse of discretion." *Commonwealth v. Miller*, 787 A.2d 1036, 1038 (Pa. Super. 2001).

Giannantonio argues that when he entered into the plea agreement in 2006 with the federal prosecutor, it was with the understanding "easily inferred from the surrounding circumstances," that he would be required to register as a sex offender in the Commonwealth of Pennsylvania for ten years. Appellant's Brief at 10. He maintains that because of this agreement, the Commonwealth entered into an implied contract with him. Alternatively, he argues that the Commonwealth was a "quasi party or third-party beneficiary to the [federal] plea agreement." *Id*. Giannantonio further contends that the Commonwealth breached that alleged agreement in 2012 by requiring him to register under the new requirements of SORNA, and asserts that this Court "should enforce the implied contract as is required by fundamental fairness and contract law, and the Contracts

Clauses" of the Constitutions of the United States and Pennsylvania. *Id*., at 9.

The Commonwealth responds that it does not owe a contractual duty to Giannantonio because it was not a party to the plea in federal court, and the record contains no evidence that the Commonwealth took any action whatsoever with respect to his federal guilty plea. Therefore, the Commonwealth argues, it cannot be seriously contended that the Commonwealth acted in any way that would create an inference that it entered into an agreement, express or implied, with Giannantonio regarding sexual offender registration.

Giannantonio's argument that the Commonwealth entered into an implied contract with him is untenable. "An implied contract is an agreement which legitimately can be inferred from the intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Martin v. Little, Brown and Co.*, 450 A.2d 984, 987 (Pa. Super. 1981) (citation and internal quotation marks omitted).

Nowhere in the record is there any indication that the Commonwealth was a party to Giannantonio's plea agreement. In fact, there is absolutely nothing in the record demonstrating that state prosecutors or the PSP participated in Giannantonio's plea agreement in any way. The record indicates that Giannantonio entered into a plea agreement with a federal

prosecutor after being charged with federal offenses stemming from his possession of child pornography. There is no indication of any involvement by Commonwealth representatives. Because the Commonwealth had no involvement or participation in the plea negotiation there is no implied contract between Giannantonio and the Commonwealth.

To circumvent this deficiency, Giannantonio alternatively argues that the "Commonwealth, though not a direct party to the plea agreement, is a quasi-party or third party beneficiary to all Megan's Law cases involving plea agreements." Appellant's Brief at 10. No case law or other authority is cited in support of this contention.

In *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), our Supreme Court explained that Section 302 of the Restatement (Second) of Contracts (1979), mandates the following two-part test to determine whether one is a third-party beneficiary to a contract:

> (1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) … the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Id*., at 751.

Of course, in the instant case, there is no express contract. *See*, *e.g.*, Appellant's Brief at 10 (noting "[e]ven though the parties did not create an express written agreement…"). Under the aforementioned test, however, even when there is no express contractual clause, an entity may still be a third-party beneficiary. However, "*Guy* did not alter the requirement that in

order for one to achieve third-party beneficiary status, that party must show that *both* parties to the contract so intended, and that such intent was within the parties' contemplation at the time the contract was formed." ***Burks v. Federal Ins. Co.***, 883 A.2d 1086, 1088 (Pa.Super. 2005) (emphasis in original).

We agree with the trial court that there was no intent here to create any contractual obligations on the Commonwealth of Pennsylvania. Pennsylvania was not a party to the agreement in any manner, thereby negating any notion of a "quasi-party." Furthermore, there is no evidence that Pennsylvania was a third-party beneficiary. Not only was there no intent to benefit Pennsylvania, no benefit at all inured to Pennsylvania because of the guilty plea. The statutorily mandated *burden* to supervise Giannantonio passed to Pennsylvania once he resumed residency here following his release, but certainly no *benefit* was realized.

Giannantonio also argues that SORNA cannot apply to him because his plea deal was structured around the 10-year Megan's Law III registration period then in effect. In support, he relies on ***Commonwealth v. Hainesworth***, 82 A.3d 444 (Pa. Super. 2013) (*en banc*), *appeal denied*, 95 A.3d 276 (Pa. 2014), and ***Commonwealth v. Partee***, 86 A.3d 245 (Pa. Super. 2014), *appeal denied*, 97 A.3d 744 (Pa. 2014). The Commonwealth responds that Giannantonio mistakenly relies on ***Hainesworth*** and ***Partee*** because the evidence of record does not even demonstrate that the ten-year

registration period was a negotiated term of the federal plea, let alone something to which the Commonwealth acquiesced. The Commonwealth is correct; *Hainesworth* and *Partee* are inapplicable. *Hainesworth* and *Partee* stand for the proposition that this Court will specifically enforce parties' plea bargains.

In *Hainesworth*, this Court affirmed the trial court's decision that the retroactive application of SORNA would offend a negotiated term in the plea agreement between the Commonwealth and Hainesworth. *See* 82 A.3d at 450. In *Partee*, the panel found that Partee's negotiated plea "was structured so that he would only be subject to a ten-year rather than a lifetime reporting requirement[.]" 86 A.3d at 249. The panel explained that, "[u]nder our reasoning in *Hainesworth*, [Partee] arguably would be entitled to the benefit of that bargain." *Id.* The panel nevertheless rejected Partee's challenge because he had violated his initial plea agreement by violating the terms of his probation, holding that, "having failed to abide by the terms of the plea bargain, that agreement is no longer in effect, and hence, [Partee] is not entitled to specific performance." *Id.*, at 250.

Unlike in *Hainesworth* and *Partee*, there is no evidence here that Giannantonio's guilty plea was negotiated or structured to insure that he would register for only a ten-year period. The record contains neither a colloquy from the federal guilty plea or sentencing hearings nor testimony or any other evidence demonstrating that counsel negotiated a specific ten-

year registration period. Rather, the guilty plea required Giannantonio to register and report pursuant to the law of the state in which he would reside following his release (not necessarily Pennsylvania). We agree with the trial court's conclusion that "because [Giannantonio] has failed to demonstrate through credible evidence that registration for a ten-year period was a bargained[-]for element of his negotiated plea, the petition for relief from SORNA's requirements for an additional [five] years was properly denied." Trial Court Opinion, dated 7/14/14, at 13.

Giannantonio next avers that "SORNA is unconstitutional as enacted and applied to him because it substantially impairs the implied contract in violation of the contract clauses of the U.S. and Pennsylvania Constitutions." Appellant's Brief at 16. As we have already found that there was no contract between Giannantonio and the Commonwealth, we need not address this contention further.

Giannantonio's final contention also lacks merit. In this argument, Giannantonio concedes that prior versions of Pennsylvania's Megan's Law have been determined to be collateral consequences of a conviction, and therefore, the laws were deemed constitutional. However, he argues that the aggregated requirements of SORNA are much more restrictive than the prior versions and are accordingly "punitive in nature as applied to [him]," thus violating the *ex post facto* clause of the United States constitution. Appellant's Brief at 25. He blames SORNA for requiring that he disclose

personal information that was not required under Megan's Law III, which he alleges led the Border Patrol to conduct an intrusive search of his person and property upon his return from Bermuda. He also emphasizes the embarrassment and inconvenience he feels for having to appear in-person to register for an additional five years. Giannantonio also claims that, because SORNA did not afford him a hearing before he was classified as a Tier I offender, his right to due process was violated. **See** Appellant's Brief at 39.[5, 6]

The Commonwealth responds that the legislature's express intent in enacting SORNA was "to provide a non-punitive statutory scheme to protect

_____

[5] Giannantonio also summarily argues that "SORNA has no rational basis in law" and "SORNA is unconstitutional as it lacks due process." Appellant's Brief at 29 and 38. He provides no discussion of, or citation to, authority pertaining to substantive and procedural due process. He also fails to cite to or analyze any case law pertaining to the test used to determine whether a statute has a "rational basis" to pass constitutional muster. Because his "due process position is underdeveloped, … we will not determine whether SORNA's retroactive increase of registration requirements can withstand either strict scrutiny or the rational basis test." **Commonwealth v. Nase**, 104 A.3d 528, 530 (Pa. Super. 2014). This undeveloped claim is waived.

[6] Gionnantonio also contends that SORNA violates due process because SORNA does not provide notice for an end date for registration, nor does it provide a hearing for offenders "to challenge the requirements imposed upon him." Appellant's Brief at 39. A simple calculation of adding the number of years of required registration onto the year of release quickly provides an end date. As demonstrated by the filing of his petition for habeas corpus, his participation in the hearing before the trial court, and the filing of the instant appeal, Giannantonio has been provided, and taken full advantage of, all available processes to challenge the requirements imposed on him. Accordingly, his due process claim is without merit.

the general public" and our Supreme Court has twice held that substantially similar language in previous versions of SORNA demonstrates a non-punitive intent. Appellee's Brief at 27 (citing **Commonwealth v. Williams**, 832 A.2d 962, 971 (Pa. 2003), and **Commonwealth v. Gaffney**, 733 A.2d 616, 619 (Pa. 1999)). The Commonwealth asserts that SORNA is a non-punitive, collateral consequence and, therefore, retroactive enforcement does not violate the federal *ex post facto* clause. Both parties analyze SORNA using the seven factors provided in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144, 168-69 (1963), a test used to determine whether the effects of a statute are punitive or civil in nature.

An issue involving a constitutional challenge presents a question of law. Thus, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Molina**, 104 A.3d 430, 441 (Pa. 2014).

This Court recently reviewed, analyzed, and rejected an *ex post facto* argument nearly identical to the one raised here. In **Commonwealth v. Perez**, 97 A.3d 747 (Pa. Super. 2014), the appellant pled *nolo contendere* to one count of indecent assault. The trial court sentenced him to a term of nine to twelve months' imprisonment, plus two years' probation, and ordered him to register as a sex offender for a period of twenty-five years pursuant to the requirements under SORNA. On appeal, Perez argued that the application of SORNA's registration requirement period was prohibited under the *ex post facto* clauses of the U.S. and Pennsylvania Constitutions

because Megan's Law III was the law in effect when he committed his offenses.

After observing that Pennsylvania courts apply the two-prong test articulated in **Smith v. Doe**, 538 U.S. 84 (2003), to determine if a law inflicts punishment,[7] a panel of this Court thoroughly analyzed SORNA utilizing the seven **Mendoza-Martinez** factors[8] before concluding that the retroactive application of SORNA did not violate the *ex post facto* clauses of the federal or state constitutions. **See id**., at 752-759.

_____

[7] The first prong of the **Smith** test requires examination of legislature's intent in enacting the law. If the intent is punitive, the statute constitutes punishment and that is the end of the analysis. If the intent is civil and non-punitive, however, the second prong of the test applies, requiring an examination of "whether the statutory scheme is so punitive either in purpose or effect as to negate [the legislature's] intent to deem it civil." **Perez**, 97 A.3d at 751 (citing **Smith**, 538 U.S. at 92).

[8] The United States Supreme Court in **Kennedy v. Mendoza–Martinez**, 372 U.S. 144 (1963), mandated a seven-factor test to be applied in determining whether the effects of a statute are sufficiently punitive to override the legislature's preferred categorization. Courts were directed to consider: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. **See id.**, at 168–169. The Supreme Court recognized that each factors' review may result in different conclusions which were to be balanced in making an overall determination of whether the statute was punitive. **See id**.

In a case decided less than two weeks after ***Perez***, a different panel of this Court specifically held that SORNA's requirement of 15 years registration for a Tier I offender was not unconstitutional. In ***Commonwealth v. McDonough***, 96 A.3d 1067 (Pa. Super. 2014), *appeal denied*, 108 A.3d 34 (Pa. 2015), the appellant was found guilty after a jury trial of indecent assault and sentenced to a term of one to two years' incarceration. He was classified as a Tier I sexual offender under SORNA, subject to a 15-year registration period. On appeal, McDonough argued, as does Giannantonio here, that the 15-year registration requirements of SORNA for a Tier I offense are not civil in nature because they impose restrictions and requirements which, if violated, can result in imprisonment. This Court rejected that contention, stating:

> While [***Commonwealth v.***] ***Gaffney***[, 733 A.2d 616 (Pa. 1999)] and [***Commonwealth v.***] ***Benner***[, 853 A.2d 1068 (Pa. Super. 2004)] were decided prior to the effective date of SORNA, the same principles behind the registration requirements for sexual offenders under Megan's Law apply to those subject to SORNA. Namely, to effectuate, through remedial legislation, the non-punitive goal of public safety. ***Gaffney***, 733 A.2d at 619; ***see*** 42 Pa.C.S. § 9791(a) (legislative findings and declaration of policy behind registration of sexual offenders). In fact, one of the main purposes behind SORNA is to fortify the registration provisions applicable to such offenders. ***See*** 42 Pa.C.S. § 9799.10 (purpose of registration of sexual offenders under SORNA); ***see also*** H.R. 75, 195th Gen. Assemb. Reg. Sess. (Pa.2012). With this purpose in mind, we cannot find that the law is unconstitutional as it applies to McDonough. He has offered neither competent nor credible evidence to undermine the legislative findings behind SORNA's registration provisions. Accordingly, we find no error.

96 A.3d at 1071.

Similar to the case presented in **McDonough**, Giannantonio has not offered any evidence to "undermine" the Legislature's remedial justification in enacting SORNA. Accordingly, his claim that the application of SORNA in the instant case violates the *ex post facto* clause of the United States Constitution fails.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Giannantonio's habeas corpus petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2015