**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1955**

_____

NICHOLAS M. SCHMITZ,

Plaintiff - Appellant,

v.

VERDAD ASSET MANAGEMENT, LLC; VERDAD ADVISERS, LP; DANIEL
RASMUSSEN,

Defendants - Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Paula Xinis, District Judge.  (8:24-cv-02291-PX)

_____

Submitted:  February 24, 2026                    Decided:  April 28, 2026

_____

Before HARRIS, QUATTLEBAUM, and HEYTENS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge
Harris and Judge Heytens joined.

_____

**ON BRIEF:** Jeffrey E. McFadden, LAW OFFICES OF JEFFREY E. MCFADDEN, LLC,
Grasonville, Maryland, for Appellant.  John R. Bauer, LAWSON & WEITZEN, LLC,
Boston, Massachusetts; Adam L. Van Grack, Theodore B. Kiviat, LONGMAN & VAN
GRACK, LLC, Bethesda, Maryland; Thomas King-Sun Fu, ORRICK, HERRINGTON &
SUTCLIFFE LLP, Los Angeles, California, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

This appeal involves the pleading requirements of the Federal Rules of Civil Procedure in the context of a dispute over the split of a hedge fund's profits. The plaintiff, Nicholas Schmitz, asserted contractual and quasi-contractual claims—promissory estoppel and unjust enrichment—involving this profit split. Like any claim, Schmitz had to plead allegations that, if accepted as true, plausibly stated a cause of action. But when, like here, these allegations conflict with the parties' written agreements, that can be a tall order. Finding that Schmitz failed to plausibly state a claim, the district court dismissed the complaint under Rule 12(b)(6). We affirm.

## I.

In 2013, Schmitz and Daniel Rasmussen hit it off as classmates at Stanford's Graduate School of Business.[1] Following graduation, Rasmussen started a hedge fund firm named Verdad. In October 2016, he approached Schmitz about joining the firm. Rasmussen envisioned Schmitz launching and managing the firm's Japanese fund.

The duo also discussed compensating Schmitz through profit sharing. These conversations touched on Verdad's future business opportunities, including an opportunity fund, which would provide "the opportunity to invest in the US markets when high-yield

---

[1] Because our standard of review frames how we address Schmitz's factual allegations, we outline it at the outset here. We review de novo the district court's dismissal of Schmitz's amended complaint under Rule 12(b)(6). *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023). Dismissal is appropriate when a complaint's allegations, viewed in the light most favorable to the plaintiff, do not state a plausible claim for relief. *Id.* But we "may also consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Id.*

2

spreads hit 6%." J.A. 44. Rasmussen "represented," J.A. 44, and "repeatedly emphasized," J.A. 46, that Schmitz "would be entitled to 20% of that fund's profits," J.A. 44. But when they reduced their negotiations to writing in March 2017, the agreement didn't say anything about an opportunity fund.[2] Instead, it only mentioned profit splits in two funds— a 50–50 arrangement in Verdad's Japanese fund and a 20–80 distribution in Verdad's core fund, with 20% to Schmitz. The agreement stated that its contents reflected "full compensation for all services provided." J.A. 71. What's more, the agreement contained an "Entire Agreement" clause, which explained the contract "contain[ed] the entire agreement between the parties," "supersed[ed] in all respects any and all prior oral or written agreements or understandings pertaining to" Schmitz's employment and could "be amended or modified only by written instrument signed by both" parties. J.A. 73.

Verdad's Japanese fund was a resounding success. So, in the spring of 2018, Schmitz proposed a second Japanese venture. Schmitz and Rasmussen also discussed Schmitz's future with the firm. According to Schmitz, he concurred in Rasmussen's "broader vision" that Schmitz would be "involved in everything Verdad does," earning at least a 10% profit share on any non-Japanese project. J.A. 51. Though this arrangement was not memorialized, Schmitz claims Rasmussen and Verdad agreed to it by "consistently" paying him 10% of the profits from Verdad's European fund. J.A. 51. But when Schmitz and Rasmussen executed an addendum to their prior written agreement in

---

[2] Schmitz attached the March 2017 agreement to his amended complaint.

3

September 2018, it stated only that the parties had agreed to a 50–50 split in the second Japanese fund.[3]

Compensation discussions picked up again in October 2018 when Rasmussen sought to bring another friend into Verdad's fold. This new hire was to be paid mostly by a profit split in the opportunity fund "significantly greater than that promised to" Schmitz. J.A. 57. Verdad's existing team, including Schmitz, also agreed to dilute their shares in other funds to cover the cost.

In addition, on October 17, 2018, Schmitz and Rasmussen exchanged emails about Verdad's profit splits.[4] An email from Schmitz to Rasmussen included two tables outlining splits in Verdad's various funds. One table listed a 15% split in the opportunity fund for Schmitz. The other—reflecting the addition of the new hire—designated a 10% share to Schmitz.

The opportunity fund launched in early 2020. The second Japanese project followed roughly a year later. As the firm started realizing revenues from these ventures, Rasmussen started "rethinking" the new hire's compensation. J.A. 58. He asked Schmitz to dilute his share in the new Japanese fund. After Schmitz refused, Rasmussen threatened to reduce Schmitz's opportunity fund compensation. Rasmussen repeated this threat approximately a dozen times. But Schmitz held firm. So, in September 2021, Rasmussen distributed to Schmitz "only 2% of the proceeds from non-Japan Verdad projects." J.A. 59.

---

[3] Schmitz also attached the addendum as an exhibit to his amended complaint.

[4] Schmitz attached the October 17 emails to his amended complaint.

4

Over the next few years, things didn't get better between Schmitz and Rasmussen. Schmitz resigned in June 2024. The following month, he asked Rasmussen to pay him an additional 8% share in all of Verdad's non-Japanese business, which, according to Schmitz, should have been $2.3 million. That didn't happen. So the next month, Schmitz sued. His amended complaint named Rasmussen, Verdad Asset Management, LLC and Verdad Advisers, LP, and his claims included breach of contract, promissory estoppel and unjust enrichment.[5]

Schmitz's breach-of-contract claim alleged the parties' conversations "created an implied-in-fact modification of the previous written agreements" between them. J.A. 63. His promissory estoppel claim centered on an alleged promise from Rasmussen to pay him 10% of the opportunity fund's profits.[6] And his unjust enrichment claim asserted the defendants did not fully compensate him for his "time, efforts, and talent." J.A. 65.

The defendants moved to dismiss the amended complaint, Schmitz responded, the defendants replied and Schmitz sought leave to file a surreply. The district court concluded Schmitz's breach-of-contract claim was untenable because the parties' written agreements did not cover profit-sharing in the opportunity fund. It also dismissed the promissory estoppel claim because the parties already had a contract covering Schmitz's

---

[5] Schmitz also asserted claims for fraud in the inducement and for spoliation, both of which the district court dismissed. Schmitz has not appealed the dismissal of those claims.

[6] While Schmitz refers at times to the defendants not paying him profits from all non-Japanese Verdad funds, he only seeks recovery for amounts not paid from the opportunity fund. Accordingly, to the extent he previously sought damages for other underpayments in his amended complaint, Schmitz has abandoned those claims.

compensation. Plus, Schmitz's allegations, as informed by the attachments, did not present a sufficiently "clear" and "definite" promise. J.A. 207. And the district court dismissed the unjust enrichment claim for similar reasons.

The district court also denied Schmitz's motion for leave to file a surreply. It found the defendants' reply had not raised new arguments. And even looking to Schmitz's proposed surreply and the exhibits attached to it, the district court determined these documents would not have changed its decision. Finally, the district court dismissed Schmitz's amended complaint with prejudice because he had amended it once before and neither his amended complaint nor his proposed surreply resolved the legal deficiencies in his case. Schmitz timely appealed.[7]

## II.

### A.

We first address Schmitz's arguments that the district court erred in dismissing his breach-of-contract, promissory estoppel and unjust enrichment claims. To make out a breach-of-contract claim under Maryland law,[8] "a plaintiff must simply show that 'the

---

[7] Following supplemental briefing from the parties, we find the district court had jurisdiction under 28 U.S.C. § 1332(a). Also, we have jurisdiction under 28 U.S.C. § 1291.

[8] In this diversity action, we apply the law of the state in which the district court sits—Maryland. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). When a Maryland court resolves a breach-of-contract claim, it generally applies "the law of the specified jurisdiction" when "the contract contains a choice of law provision." *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015). The parties' 2017 agreement contains a choice-of-law provision that says Texas law applies. But "choice of law is waivable" in a diversity action. *Weiner v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 779 (4th Cir. 2023). Waiver occurs when a party "affirmatively litigat[es] under the substantive law of" another

defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 265 (Md. 2018) (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). Here, neither the parties' March 2017 agreement nor their subsequent addendum memorialized a contractual term regarding profit-sharing in the opportunity fund.

Without a written agreement on point, Schmitz argues instead that the parties modified their contracts through their conduct. "An implied contract is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 606 (Md. 2000) (internal quotation marks omitted) (quoting *Martin v. Little, Brown & Co.*, 450 A.2d 984, 987 (Pa. Super. Ct. 1981)).

The problem with Schmitz's argument is that it runs headlong into the March 2017 agreement's Entire Agreement clause. Recall that this term stated the contract was to "be amended or modified only by written instrument signed by both" parties. J.A. 73. Because the Entire Agreement clause required all subsequent modifications to the parties' compensation arrangement be in writing, it expressly precludes the formation of an implied contract.

---

state. *Id.* A party also waives arguments raised for the first time in reply. *Bixby v. Stirling*, 90 F.4th 140, 154 n.9 (4th Cir. 2024). Here, the parties litigated this case exclusively under Maryland law below. Also, the parties' opening and response briefs proceed only under Maryland law. Schmitz mentions Texas law only in his reply brief. Accordingly, the parties have waived the application of Texas law, and Maryland law applies.

7

True, Maryland "caselaw shows a persistent unwillingness to give dispositive and preclusive effect to contractual limitations on future changes to [a] contract." *Hovnanian Land Inv. Grp., LLC v. Annapolis Town Ctr. at Parole, LLC*, 25 A.3d 967, 982 (Md. 2011). And Maryland has adopted "the well settled rule that the parties by their conduct may waive the requirements of a written contract . . . notwithstanding a written agreement that any change to a contract must be in writing," like the limitation found in the Entire Agreement clause. *Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977).

Yet Schmitz's allegations, even if accepted as true, do not show or give rise to an inference the parties engaged in a course of conduct contrary to their written agreements. In fact, the allegations show that although the parties discussed profit splits at times, they memorialized their obligations in writing.

Resisting this, Schmitz contends the parties demonstrated their course of conduct through Verdad's consistent disbursement of 10% of the European fund's profits to him. But what Verdad may have done with the European fund does not plausibly state a claim as to the opportunity fund, which is the subject of his claims. Importantly, Schmitz alleges no facts about Verdad paying him 10% of the opportunity fund. All he alleges about the opportunity fund is back and forth about his split. He alleges no facts that Rasmussen or Verdad agreed to his proposals. From that, it's not reasonable to infer from Schmitz's allegations that the parties also agreed to give Schmitz 10% of the opportunity fund's profits.

Schmitz's promissory estoppel and unjust enrichment claims fare no better. In Maryland, promissory estoppel and unjust enrichment claims are quasi-contract claims.

8

*Ver Brycke v. Ver Brycke*, 843 A.2d 758, 772 n.9 (Md. 2004). This means they "cannot be asserted where an express contract defining the rights and remedies of the parties exists." *J. Roland Dashiell & Sons*, 747 A.2d at 610. For this principle to operate, "an express contract between the parties" must "control[] th[e] subject matter." *Id.* Here, the parties' 2017 contract sets out Schmitz's "full compensation for all services provided." J.A. 71. And it remains silent as to payment from the opportunity fund. So does the 2018 agreement.

Schmitz stresses contracts concerning certain funds do not contemplate how the parties might split profits from other ventures. But this argument ignores the language of the 2017 agreement. Indeed, the 2017 agreement leaves no room for additional compensation, without a written modification, because it provides for Schmitz's "full compensation." J.A. 71. Therefore, this provision "control[s] th[e] subject matter" of Schmitz's payment, precluding recovery on his promissory estoppel and unjust enrichment claims. *J. Roland Dashiell & Sons*, 747 A.2d at 610.

Even assuming the 2017 agreement does not control Schmitz's full compensation, he still has not pled a promissory estoppel claim. As the district court recognized, a promissory estoppel claim in Maryland requires the defendant to make "a clear and definite promise," *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996) (emphasis omitted). The district court determined Schmitz had not stated a claim because his allegations and attachments did not demonstrate Rasmussen ever made a promise concerning the opportunity fund. For the reasons explained above, we agree—while Rasmussen and Schmitz discussed the opportunity fund, nothing Schmitz pled shows Rasmussen promised him compensation.

9

That leaves Schmitz's unjust enrichment claim. An unjust enrichment claim under Maryland law has three elements: "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 887 A.2d 525, 546 (Md. 2005). Because Schmitz has not sufficiently pled he was entitled to more than 2% of the opportunity fund's profits, he has not demonstrated the defendants acted inequitably by refusing to pay him a greater share of the opportunity fund pie.

**B.**

Finally, we turn to Schmitz's challenges to the district court's decisions to reject his proposed surreply and dismiss his amended complaint with prejudice.[9] Schmitz's proposed surreply responded to documents the defendants attached to their reply in support of their motion to dismiss and included additional attachments of its own. He argues that this new information saves his claims. He also contends the district court shouldn't have dismissed his amended complaint with prejudice because its consideration of the defendants' exhibits submitted in reply converted the defendants' motion to dismiss to a motion for summary judgment, prejudicing him since, at the same time, the district court elected not to review other evidence he attached to his proposed surreply.

---

[9] We review these decisions for abuse of discretion. *Fed. Deposit Ins. Corp. v. Cashion*, 720 F.3d 169, 175–76 (4th Cir. 2013) (surreply); *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 113 (4th Cir. 2025) (dismissal with prejudice).

10

But even if the district court strayed too far by considering the documents that it did, we are "satisfied 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors.'" *Shears v. Ethicon, Inc.*, 109 F.4th 235, 241 (4th Cir. 2024) (quoting *Wickersham v. Ford Motor Co.*, 997 F.3d 526, 531 (4th Cir. 2021)). That's because neither Schmitz's allegations nor the attachments submitted by the parties support a reasonable inference that the parties agreed to distribute 10% of the opportunity fund's profits to Schmitz. In other words, the district court correctly held that Schmitz failed to plausibly state a claim through his allegations in the amended complaint and his attachments to that pleading. And since Schmitz's proposed surreply doesn't change this result, allowing him another chance to amend his complaint would have been futile. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (finding dismissal with prejudice appropriate when "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"). So, the district court did not abuse its discretion in rejecting Schmitz's surreply and dismissing his amended complaint with prejudice.

## III.

For these reasons, we affirm the district court's order of dismissal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid the decisional process.

*AFFIRMED*

11